# IN RE PETITION OF DUANE M. WILSON AND ANOTHER TO ADOPT MARY ELIZABETH BARNET AND ANOTHER v. DAVID F. BARNET, JR.

144 N. W. (2d) 700.

August 19, 1966—No. 39,941.

*John G. Engberg* and *Helgesen, Peterson, Engberg & Spector,* for appellant.

*A. Larry Katz* and *Katz, Burstein & Galbraith,* for respondents.

OTIS, JUSTICE.

This is an appeal by a natural father from an adjudication granting foster parents the right to adopt his two infant daughters. The issue is whether the evidence supports a finding that the father is unfit and not entitled to withhold consent.

In January 1959, when 18 years of age, David Barnet, Jr., left college and joined the Navy in order to support his future wife, then pregnant, whom he married on April 11, 1959. A daughter, Mary Elizabeth, was born August 28, 1959. After completing boot camp and receiving medical training, Barnet was assigned to a Navy hospital in Minneapolis. A second child, Ann Louise, was born September 20, 1960, and a third child, Debra, on May 4, 1962.[1]

Because Mrs. Barnet was a paraplegic and sought therapy and rehabilitation, she consented on July 21, 1962, to the placement of Mary Elizabeth and Ann Louise in the foster home of the petitioners, Duane and Shirley Wilson. On January 25, 1963, Barnet was discharged from the Navy. The following month he was divorced. The action was instituted by Mrs. Barnet and was uncontested. The terms of the decree were reached by a stipulation of the parties. Mrs. Barnet was given legal custody of the children, subject to the father's right of reasonable visitation. He was directed to pay the children's mother the sum of $45.63 a month for the support of each child.

During most of 1963 Barnet drifted from job to job in other parts of the country. He worked in a carnival, trained as a medical technician, and sold household goods. Early in 1964 he married his first wife's sister, and thereafter was only sporadically employed. At the time of oral argu-

---

[1] With the consent of both parents, Debra has been adopted in proceedings which have no relationship to the matter at hand.

ment he had left Minnesota to secure work elsewhere and was again experiencing marital difficulties.

In May 1964, the Wilsons petitioned for the adoption of Mary Elizabeth and Ann Louise. Although at the time of the hearing in September 1964 the mother consented to the adoption, the father has contested the petition and perfected this appeal.

■ Under Minn. St. 259.24, subd. 1(b), consent to adoption is not required of a parent who has lost custody of a child through a divorce decree. However, we have construed the statute to mean that parental rights may be judicially extinguished only where the divorce proceedings have actually adjudicated the question of a parent's misconduct or unfitness. In re Petition of Parks, 267 Minn. 468, 476, 127 N. W. (2d) 548, 554. As we pointed out in Parks, a mere designation of custodial preference reached by stipulation of the parties in the divorce proceedings in no way determines the fitness or unfitness of the noncustodial parent. Again, In re Petition of Nelson v. Bye, 271 Minn. 194, 135 N. W. (2d) 700, stressed the need for a hearing on the question of fitness before severing a parent's relationship with his child, where the right of custody granted the other parent is extinguished by death, disability, or a second divorce. No reason occurs to us why the rules which apply in such cases should not also govern where the mother proposes to extinguish her parental rights by voluntarily consenting to an adoption.[2] In Kienlen v. Kienlen, 227 Minn. 137, 139, 34 N. W. (2d) 351, 353, we held that upon the death of the custodial parent the right to custody automatically inures to the surviving parent, unless he is unfit or it is contrary to the best interests of the child.[3] We there observed that the natural rights of the father are not completely annulled by a divorce decree which awards custody to the mother, but are merely suspended, and are revived in full force by the mother's death, at which time the father has the first and paramount right to the child's custody.

---

[2] A natural parent's consent to the adoption of a child by a *spouse* does not, of course, extinguish that parent's rights.

[3] Under the provisions of Minn. St. 260.191, the juvenile court can deprive a parent of custody, without actually extinguishing parental rights, if the best interests of the child so dictate.

In the Parks case we held that the forfeiture of parental rights could properly be decided in the adoption proceedings if the juvenile court had jurisdiction in both matters. While we adhere to that view, we believe the better practice, and one we commend in contested matters in the future, is to resolve the question of parental fitness before the adoption petition is heard. By proceeding in this manner the undesirable propensity of courts to base their decisions on a comparison of the qualifications of natural parents and the foster parents is avoided. The real issue is whether the natural parents are unfit to retain the rights incident to parents out of custody, not whether one home is preferable to another.[4]

Where in a contested matter the probate-juvenile court does not have jurisdiction over the adoption because the judge is a layman, Minn. St. 260.111, subd. 2(d), the district court should henceforth refer to the probate-juvenile court the issue of parental fitness before hearing the adoption petition.

The following conclusions emerge from our decisions:

(a) Unless there is a final adjudication of unfitness prior to the adoption proceedings, § 259.24, subd. 1(b), gives to a parent, previously denied custody, the right to a hearing if such parent refuses to consent to the adoption.

(b) In adoption proceedings it is in the best interests of the child that parental rights not be extinguished unless the parent is found to be unfit.

(c) Parents are presumed to be fit to have the care, custody, and control of their own children, and petitioners in an adoption proceeding have the burden of proving otherwise.[5]

(d) A parent who has not been found unfit, but has been denied custody only because of a divorce decree, automatically resumes the right to custody when the custodial parent's rights are terminated.

(e) Since we are here considering the permanent and irrevocable

---

[4] Simpson, *The Unfit Parent: Conditions Under Which a Child May be Adopted Without the Consent of His Parent,* 39 U. of Detroit L. J. 347; Note, 14 U. of Kan. L. Rev. 117.

[5] In re Petition of Alsdurf, 270 Minn. 236, 242, 133 N. W. (2d) 479, 482.

termination of all parental rights and not a custodial preference which is tentative and subject to revision, we hold that the criteria for determining parental fitness under our construction of § 259.24, subd. 1(b), are those adopted by statute for extinguishing parental rights under § 259.24, subd. 1(c), set forth in § 260.221 as follows:

"The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

"(a) With the written consent of parents who for good cause desire to terminate their parental rights; or

"(b) If it finds that one or more of the following conditions exist:

"(1) That the parents have abandoned the child; or

"(2) That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection; or

"(3) That, although the parents are financially able, they have substantially and continuously neglected to provide the child with necessary subsistence, education, or other care necessary for his physical or mental health or morals or have neglected to pay for such subsistence, education or other care when legal custody is lodged with others; or

"(4) That the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, or other conduct found by the court to be likely to be detrimental to the physical or mental health or morals of the child; or

"(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

■ The issue in the matter before us is then narrowed to the question of whether the evidence supports the court's findings and conclusions that Barnet's parental rights have been extinguished by conduct condemned under the statute.

The court's holding that the decree of divorce terminated Barnet's right to custody is untenable for the reasons we have already stated. However, its finding that Barnet's subsequent misconduct "adversely affected the children's welfare and extinguished his right to custody" is sup-

ported by the evidence. In an accompanying memorandum the court stated that Barnet had neither complied with the support provisions of the decree nor given a satisfactory explanation for such default. In addition, the court emphasized that Barnet's failure to exercise his privilege of visitation, except three or four times, constituted "unjustified neglect of the two children."

It appears from his own testimony that after the Wilsons secured custody in July 1962, although he was in a position to do so, Barnet did not visit the children more than twice at their home and twice elsewhere, on each occasion briefly. After his discharge from the Navy, he provided the foster parents with no support whatever. We hold the court's finding that Barnet's neglect of his children was unjustified is sustained. While the court did not terminate Barnet's parental rights by express reference to § 260.221, we believe its conclusions are tantamount to invoking § 260.221 (b) (3). That section authorizes the termination of the rights of a parent who is financially able to pay for his children's subsistence and care, while legal custody is lodged with other persons, but neglects to do so.[6]

The granting of the petition for adoption was therefore proper.
Affirmed.

---

[6] We do not intimate that failure to pay subsistence is the only ground for terminating parental rights where legal custody is lodged with others. Merely providing support but otherwise ignoring one's children may be equally deleterious to their care, protection, health, and morals.