IN RE PETITION OF DONALD C. EGGERT AND ANOTHER TO ADOPT GREGORY ANTHONY EGGERT v. ANTHONY VAN De WEGHE.

155 N. W. (2d) 454.

December 22, 1967—No. 40,466.

*Shear & Rooney,* for appellant.

*Wilton E. Gervais, Stanford Robins,* and *Robins, Davis & Lyons,* for respondents.

ROGOSHESKE, JUSTICE.

This appeal raises the question of whether the evidence of parental

conduct of a father who is deprived of custody subsequent to a divorce and a modification of the decree relieving him of all support and forbidding him from visiting or contacting his minor son is sufficient to justify a termination of his parental rights, thereby terminating his statutory right to refuse to consent to an adoption by his son's stepfather. We hold that the evidence does not establish parental unfitness essential to a termination of such rights, and the adoption granted to the stepfather by the probate-juvenile court of Blue Earth County is not authorized without the natural father's consent as required by Minn. St. 259.24, subd. 1.

Petitioners-respondents, Donald and Carolann Eggert, are the stepfather and natural mother of Gregory Anthony Van De Weghe, the only offspring of Carolann Eggert's marriage in 1956 to appellant, Anthony Van De Weghe. Gregory was born on October 31,1958. His parents separated in 1959, and his mother obtained a divorce from his father in April 1960. The divorce decree granted custody to the natural mother and visitation rights of 1 hour on Wednesday morning of each week to appellant with the right to make such visits outside the mother's home after Gregory reached 2 years of age.[1] He was also required to pay $60 a month for the support of Gregory and $30 a month alimony to the mother and to maintain certain insurance policies for Gregory's benefit. For reasons unexplained in the record under review, appellant's exercise of his right to visit his son in the home of his former wife's parents, where she and Gregory lived, produced considerable friction.

On December 15, 1961, at a hearing in district court on appellant's motion for a change of custody and for an order finding the mother in contempt for her alleged refusal to permit visitation, the parties reached an oral agreement expressed by the court in their presence in these words:

---

[1] Only a copy of the decree is made part of the record. Neither the transcript of the testimony nor the findings upon which it is based are included in the record or contained in the clerk's file, and we are not informed whether the divorce was granted after trial or upon default.

"The Court: I have discussed this matter with both counsel and Mr. and Mrs. Vandeweghe and it is the understanding of the Court from what has been told to me that both of you are having extreme difficulty with the problem of visitation of the child by Mr. Vandeweghe, and I also understand that it has been agreed between the two of you that the best interest of the child at this time and until the further order of the Court, requires that Mr. Vandeweghe not visit the child nor appear at the home where the child is staying, nor that you seek out the child and attempt any surreptitious visits or interfere with Mrs. Vandeweghe in any way.

"It is also understood that you are not being denied this visitation, Mr. Vandeweghe, and that this is something that you are doing voluntarily, realizing that the best interest of the child require it at this time. I also understand that the plaintiff is waiving any claim to alimony and that you are relieved of the obligation of making any support payments for so long as the visitation rights are suspended.

\* \* \* \* \*

"It is also understood that the Court cannot relieve either of you of the obligation of caring for and supporting this child, nor can the Court cut off the rights you have as parents. However, it is the Court's understanding that in the absence of a material change of circumstances the parties will not seek to change this order. However, each party, and this cannot be denied to you, has the right to apply to the Court at some future date for amendment of this order if a material change in the circumstances occurs."

With reference to the friction over visitation, the district court stated, "As to whose fault it may be the Court has no knowledge and makes no determination." The record makes clear that the parties chose not to litigate this issue and that the agreement was accepted and approved by the court as the parties' own solution for settling the dispute concerning their respective rights and duties for the care and protection of their son.

Pursuant to the agreement, an order was entered on January 9, 1962, relieving appellant "until further order of the Court" from any

financial obligation for alimony, support, or insurance protection. It further provided without express limitation that appellant "shall have no right of visitation nor shall he visit the home of plaintiff nor shall he in any way interfere with plaintiff or contact said minor child."

The petition to adopt Gregory was filed June 16, 1965, and was heard by the probate-juvenile court on September 9, 1965, and March 19, 1966. The evidence submitted established that petitioner Donald Eggert married Gregory's mother on April 17, 1964, at which time they were 36 and 27 years old respectively. They met while both were voluntary inmates of Willmar State Hospital during the winter of 1963-64—she, for drug addiction and he, for alcoholism. They were married shortly after their release from the hospital and are presently purchasing a home in St. Clair, where, with Gregory and their son, Scott, born August 4, 1965, they now reside. Mr. Eggert was previously married and was divorced in 1958. He has two children by that marriage (a girl, 8, and a boy, 14), both of whom are in the custody of his former wife who is now remarried. He is presently employed as a driver-salesman for a beer wholesaler, his income is ample, and his home is adequate for the rearing of children. Both he and his wife have by all indications conquered their respective addictions. With the consent of the parties, an investigation of petitioners' fitness and home was made by the county welfare agency. The written report of the agency received in evidence at the adjourned hearing in March 1966 expressed approval of petitioners' fitness and home and recommended adoption as serving the child's best interests. The report specifically indicated the desirability that his name be changed since he was being subjected to "some considerable ridiculing" from his classmates about the difference between his name and that of his family.

Appellant, 38 years old and an immigrant from the Netherlands in 1953, has not remarried. He is employed by a private club as assistant manager. Subsequent to the order forbidding visitation and relieving him of support, he has not made nor attempted to make any payments of support. He admits also that during this period he made no direct inquiries of his former wife concerning his son's welfare nor any direct attempt to contact his son and has not sent him any cards or gifts.

His explanation is that he was advised by counsel and understood that such action was prohibited by the court's order and that he believed that any attempts to send cards or gifts would be rebuffed by his former wife or her parents, as had been the case prior to the order. While the record and his testimony are regrettably not illuminating as to the cause of the difficulties over visitation, the reasons which motivated appellant in the modification of the decree, and his explanation for his subsequent conduct in not attempting to obtain custody when he became aware of his former wife's hospitalization, his testimony does show in a general way that he was continuously concerned over the welfare of his son and was willing and able to contribute to his support. However, appellant believed that it was best to wait until his son was older to develop a relationship with him and that attempts to reestablish contact were unrealistic and would not serve the child's best interests, since without the aid of relatives it would be "difficult" to undertake personal care and custody. He testified that he objected to adoption out of concern for his son's future welfare and apprehension concerning his former wife's emotional stability, stating, "I am afraid if something does happen to the parents that I should be able to step in as I feel responsible for his welfare and would want to be able to take over."

Essentially, the juvenile court granted the petition because the adoption would serve the child's best interests. The court concluded that appellant's consent was not required because "by implication the modification of the divorce Decree * * * extinguished any rights [of appellant] to the custody of the child," and he, by conduct subsequent to the divorce "adverse to the child's welfare," "voluntarily relinquished" and "forfeited" his parental rights.

Under our adoption statutes, appellant's consent is required unless he has "lost custody through a divorce decree" within the meaning of Minn. St. 259.24, subd. 1(b). We have held this provision to mean that the consent of a natural parent who does not have custody may be dispensed with only in those cases where the issue of the alleged unfitness underlying his parental rights is raised and adjudicated in the divorce proceeding and his right to custody is extinguished by the

divorce decree. In re Petition of Parks, 267 Minn. 468, 127 N. W. (2d) 548; In re Petition of Nelson v. Bye, 271 Minn. 194, 135 N. W. (2d) 700; In re Petition of Wilson v. Barnet, 275 Minn. 32, 144 N. W. (2d) 700.

There is nothing in the record of the divorce proceedings which indicates that the question of appellant's fitness to have custody was either raised or adjudicated. On the contrary, the decree granting visitation rights to appellant negatives any intention of terminating appellant's parental rights and points more to an enlargement of those rights as the child grows older. The hearing resulting in the order suspending visitation rights and support payments was initiated by appellant for the purpose of obtaining custody and assuming full responsibility for the care of the child, not to eliminate his parental rights. The record of the hearing explicitly negatives any implication that the question of his parental fitness was litigated or that it was intended that his rights to custody be extinguished. It is made clear that appellant consented to suspend the exercise of his visitation rights and the child's mother consented to waive payment of alimony and support upon agreement by them that the child's best interests would be advanced thereby. Thus, we cannot agree upon this record that the divorce proceedings adjudicated appellant's fitness to have custody or that by implication the decree as modified extinguished this right.

But the court also concluded that appellant's conduct following the divorce resulted in a forfeiture of rights. For reasons we believe apparent in the recital of the testimony, we hold the evidence insufficient to sustain this conclusion. As pointed out in In re Petition of Nelson v. Bye, 271 Minn. 194, 198, 135 N. W. (2d) 700, 703:

"* * * In the absence of evidence of unfitness which would warrant severance of the parent-child relationship in the interest of the child's welfare, the right of the natural parent who initially loses custody of a child as a result of a divorce decree should not be extinguished so as to prevent such parent from seeking custody in the event of death, subsequent divorce, or other changes in circumstances of the prevailing party."

In In re Petition of Wilson v. Barnet, *supra*, decided after these proceedings were before the juvenile court, we held that the criteria for determining parental fitness in an adoption proceeding are those provided by Minn. St. 260.221 and employed in proceedings initiated in the juvenile court to terminate all parental rights. We also urged that the question of whether a parent who does not have custody is unfit and his parental rights subject to termination by conduct condemned under the statute ought to be separately determined prior to a consideration of whether the adoption would serve the best interests of the child. Such a procedure, if followed in this case, would likely have avoided the error evident here of the parties' failing to submit evidence on the critical issue of unfitness and would have enabled the court to make specific findings on that issue. Quite understandably, the result of the procedure employed was to base the decision essentially upon a determination that the qualifications of petitioners to serve the child's best interests were preferable to those possessed by appellant, rather than upon a finding of unfitness.

In an adoption proceeding such as this where the parent not having custody has not lost it through a divorce decree and withholds consent, two issues necessarily are presented, namely, whether such parent's conduct subsequent to the divorce establishes parental unfitness justifying a termination of his rights and whether the proposed adoption would serve the best interests of the child. It is not sufficient to determine merely that the best interests of the child would be served by adoption. The "best interests of the child" is an imprecise standard. The application of this standard alone to determine parental fitness ignores the fundamental importance of the rights of natural parents and the statutory standards required to be met for a complete and permanent severance of such rights. While In re Adoption of Jaren, 223 Minn. 561, 27 N. W. (2d) 656, and In re Petition of Jordet, 248 Minn. 433, 80 N. W. (2d) 642, relied upon by petitioners, can be read to stand for the proposition that the best interests of the child may be solely determinative, they should not be so interpreted for reasons stated in In re Petition of Parks, *supra*.

Cases may arise where, under extreme circumstances, the needs or

best interests of the child may justify an adoption without a finding of unfitness. However, our three most recent cases emphasize our adherence to the policy of protecting the rights of parents who do not have custody in controversies involving termination of the parent-child relationship. In adoption proceedings it is in the best interests of the child that the parental rights of the parent out of custody not be terminated unless parental unfitness is found. A determination that the best welfare of the child would be served by his remaining in petitioners' home does not alone justify granting adoption without the consent of the parent not having custody.[2] Upon the record under review, petitioners have not sustained their burden of proving appellant unfit to retain his parental right to have or to seek future custody of the child in the event that a change of circumstances requires or justifies it. Surely, his scrupulous obedience to the provisions of the order modifying the decree is not evidence of unfitness. His conduct apart from the command of that order in failing to seek an amendment when he learned of the child's mother's illness, without presumably any efforts on her part to request or to compel a renewal of his role in the care and protection of the child, does not bespeak parental neglect, mistreatment, or abandonment of the character condemned by the statute and required for the termination of parental rights.

Reversed.

[2] Cf. Caruso v. Caruso, 175 Misc. 290, 23 N. Y. S. (2d) 239; In re Adoption of Walpole, 5 Ill. App. (2d) 362, 125 N. E. (2d) 645.