## ARLIN CURTISS AND ANOTHER v.
## GERALD LeROY HAGEN AND ANOTHER.

159 N. W. (2d) 193.

May 17, 1968—Nos. 40,952, 40,953.

*Nelson & Oyen* and *John P. Nelson,* for appellants.

*Prindle, Maland & Ward* and *Donald L. Maland,* for respondents.

Frank T. Gallagher, Justice.

This is an appeal from an order denying a motion for amended findings or, in the alternative, for a new trial. The case arose out of a petition filed in the juvenile court of Chippewa County for the adoption of Gerald Hagen by Arlin and Velma Curtiss, alleging that the child's natural parents, Gerald LeRoy Hagen and Dona Hagen, had abandoned him.

At the time, Mrs. Curtiss, an aunt, was the child's guardian, having been so appointed by order of the probate court on March 23, 1965.

The juvenile court found that the Hagens had not abandoned the child within the meaning of Minn. St. 259.24, subd. 1(b),[1] and in the absence of their consent denied the petition in an order dated June 27, 1966. On August 15, 1966, the Hagens petitioned the District Court of Chippewa County for a writ of habeas corpus ordering the Curtisses to produce the child at a hearing for the determination of his custody. The writ was granted and consolidated for trial with an appeal taken by the Curtisses from the order denying their petition for adoption. The district court also found that there had been no abandonment and determined that custody of the child should be vested in his natural parents.

The child was born May 19, 1962, to the present Mrs. Hagen, who married Mr. Hagen in February 1965. Prior to their marriage they had lived together since approximately 1959. Mr. Hagen is presently steadily employed in Minneapolis as a machinist at the Dalton Gear Company and makes over $100 per week. As a result of an auto accident on March 15, 1963, in which he was severely injured and suffered brain damage, he underwent a long period of rehabilitation. Immediately after the accident, in order to lighten the burden of Mr. Hagen's recovery and rehabilitation, the Hagens sent their two children, Gerald (the subject of this case) and Laurie, to Mrs. Hagen's sister, Mrs. Curtiss, where Gerald has remained ever since.

---

[1] Minn. St. 259.24, subd. 1, provides in part: "No child shall be adopted without the consent of his parents * * * except in the following instances:

* * * * *

"(b) Consent shall not be required of a parent who has abandoned the child * * *."

In December 1963, after Mr. Hagen had partially recovered, the Hagens planned to go to California to seek employment. They went to the Curtiss home at Montevideo with the intention of taking both children along. However, apparently as a result of a reconsideration and discussion of the trip with the Curtisses, they left Gerald in Montevideo and took only Laurie to California. The plan was to have Gerald sent to them after they became established economically, but things did not work out well in California and the Hagens returned to Minnesota in March 1964. Mr. Hagen, still not recovered from his injury, received vocational rehabilitation in Minneapolis, which resulted in his employment in April 1965 as a machinist. The Hagens were quite impoverished until Mr. Hagen was able to obtain his present employment.

The Hagens and the Curtisses apparently got along well until February 1965, when the Hagens refused to permit Gerald to be adopted. In late 1964, Mr. Curtiss stopped in Minneapolis and called Mrs. Hagen. At that time, he asserts, he mentioned the possibility of adopting Gerald. In January 1965, Mr. Curtiss again stopped in Minneapolis and specifically asked Mrs. Hagen to consent to the adoption of Gerald. She indicated that she was willing to do so but would have to discuss it with her husband. Consent papers were sent to the Hagens, but they were never signed nor returned to the Curtisses. Mrs. Hagen then called Mrs. Curtiss and promised to send the papers in February 1965. Thereafter, when the papers did not arrive, it was revealed that the Hagens had changed their minds and refused to sign. The Curtisses petitioned on March 31, 1965, for adoption of the boy.

The record contains a great deal of testimony concerning the treatment Gerald receives from the Curtiss family and the claim that he thinks of the Curtisses as his true family. We deem it unnecessary to detail that testimony as much of it is not relevant to the fitness of the Hagens or whether they had abandoned Gerald, which were the main issues before the district court. However, the actions and contacts of the Hagens with the child are relevant to both of these questions.

From the time the Hagens returned from California in March 1964 until the Curtisses approached them in January 1965 concerning adoption, the Curtisses claim they received no letters, calls, or inquiries from

the Hagens concerning Gerald. The Hagens were then in poor straits economically. While they were in California, which was a period of only 2 months, the Curtisses received one letter but no telephone calls. The letter expressed Mrs. Hagen's thanks to her sister for having kept Gerald and explained that things were not going well for them in California. Early in May 1963, about 2 months after Mr. Hagen's accident in March when Gerald was sent to the Curtisses, Mrs. Hagen visited her sister and saw Gerald. Later that month they visited at the Curtiss home for Gerald's birthday on May 19. A payment of $20 was made by the Hagens to the Curtisses for the care of Gerald within a couple of weeks after that visit. A $5 payment was made in Otober 1965, but it was returned by the Curtisses. Upon the Hagens' return from California, Mrs. Curtiss also received from them a shirt, pants, and a card for Gerald.

Following their visit on May 19, 1963, the next time the Hagens visited the Curtisses was in August 1963. After that visit, Mrs. Curtiss claims to have received a telephone call from Mrs. Hagen in which she said that Laurie and Mrs. Hagen were receiving beatings from Mr. Hagen and that she wished that she had left her daughter with the Curtisses also. Mrs. Hagen denied that she had made such statements and said that in fact her husband had never beaten her or their children.

With respect to the Curtiss family relations, on cross-examination Mrs. Curtiss admitted that they had problems with their own two grown boys, 19 and 17 years of age, saying that "all parents have problems with grown boys," but the boys had never run away from home and the family had always worked things out.

After the Hagens declined to consent to Gerald's adoption, Mrs.Curtiss informed them in a letter that they were not welcome in the Curtiss home and by telephone that she never wanted to see them again. She also stated that they could visit Gerald but would have to visit with him elsewhere than in the Curtiss home. Aside from the obvious attachment of the Curtisses to Gerald and their feeling that his best interests would be served by his remaining in Montevideo, a motivation for initiation of the adoption proceedings was stated when Mrs. Curtiss testified that they had been commenced after an apparent disagreement between the two sisters in February 1965. She said in part:

"Well, it hurt me to no end when she said we will fight it, because we had talked it over, and when she said we will fight it after we had done so much already, I didn't think that was the proper procedure."

It will serve no useful purpose to further set out the record here except to say that is is obvious the Curtisses have become attached to Gerald and believe that it will be in the best interests of the child if they rather than his natural parents are permitted to rear him. On the other hand, while the earlier history of the Hagens leaves much to be desired, the record shows they are now apparently trying to correct past conditions and misfortunes and rear their children who are with them in a proper manner. They are now churchgoers, belong to a church congregation in Minneapolis, and Laurie attends Sunday school. Mr. Hagen has apparently nearly recovered from the handicaps he incurred in the auto accident in March 1963 and is presently employed as a machinist with an income of more than $100 a week. Although he has a somewhat lengthy list of driving infractions, some of them occurred during extenuating circumstances.

The Hennepin County Welfare Department report is favorable to the Hagens and indicates they "have always been anxious to get Gerald back." The commissioner of public welfare recommended that the adoption be granted *"when the consent of the natural parents have been obtained."* (Italics supplied.) Dr. Lester Edens, a psychologist called by the Curtisses, testified in essence that the shift to a new home by Gerald at this time in his life could very well have an adverse effect on his personality. Nonetheless, the juvenile court found that the Hagens had not abandoned Gerald within the meaning of Minn. St. 259.24 and denied the adoption petition. On appeal, the district court found also there was no abandonment by the Hagens and that Gerald's custody should be vested in them. It is our opinion that the record sustains these findings.

In that connection, we cannot ignore the commendable services performed by the Curtisses in connection with the care and attention furnished to Gerald during the time he has been with them. It is only natural under the circumstances that they would have developed a love and affection for the boy which seems to have been reciprocated by Gerald.

Although the best interests of the child are traditionally said to be the prime consideration in a determination of custody, the latitude given the trial court in awarding custody is extensive. State ex rel. Waslie v. Waslie, 277 Minn. 446, 152 N. W. (2d) 755. In cases in which the natural parents are given custody, that result is based both on their superior right to custody of their child and the absence of evidence to rebut the presumption that the child's best welfare is served by being in their custody. In re Dependency of Klugman, 256 Minn. 113, 97 N. W. (2d) 425. The record sustains the court's award of Gerald's custody to his parents. The denial of the adoption petition was also proper and is fully sustained by sufficient evidence that no abandonment had occurred. See, In re Petition of Eggert, 279 Minn. 31, 155 N. W. (2d) 454.

Affirmed.