# IN RE PETITION OF ROLLO R. McDONALD AND ANOTHER TO ADOPT TROY JAMES McDONALD v. MICHELE M. COPPERUD.

206 N. W. 2d 551.

March 23, 1973—No. 43440.

*Arthur D. Walsh,* for appellant.
*Chester A. Bruvold,* for respondents.

Heard before Knutson, C. J., and Otis, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

This is an appeal from a decree of adoption of a minor child, Troy, in Hennepin County District Court, Juvenile Division, over

the objection of the child's natural mother, appellant Michele M. Copperud. The appeal involves the propriety of a pre-adoption decree terminating the parental rights of Michele.[1] We reverse and remand for a new trial.

Troy was born on July 5, 1963, to the marriage of Michele and respondent Rollo R. McDonald. The marriage was terminated by divorce January 13, 1965, in proceedings initiated by Rollo and uncontested by Michele. Rollo was awarded custody of Troy, subject to reasonable visitation rights reserved to Michele. Rollo married respondent-petitioner Elaine McDonald on June 21, 1968, and Michele married David Copperud on August 10, 1968.

The validity of the decree of adoption over the objection of the child's natural parent, Michele,[2] hinges upon the validity of the decree terminating Michele's parental rights. Under the statutory provisions relevant to the claims and circumstances here presented, Michele's consent was not necessary if she were found to have "abandoned the child," Minn. St. 259.24, subd. 1(b),[3]

---

[1] The termination of appellant's parental rights was determined in a separate proceeding prior to consideration of respondents' adoption petition, as directed by In re Petition of Wilson v. Barnet, 275 Minn. 32, 35, 144 N. W. 2d 700, 702 (1966). The decree of termination was issued on December 10, 1970. An appeal from an order denying appellant's motion for a new trial in the termination proceedings was dismissed without prejudice to appellant's right of review on that issue upon this appeal from the subsequent decree of adoption. See, In re Petition of Zerby, 280 Minn. 514, 160 N. W. 2d 255 (1968). The decree of adoption was entered on October 6, 1971.

[2] Respondent Rollo R. McDonald, as natural father, formally consented to the adoption. It is, of course, the petition for adoption by Rollo's wife, Elaine, and the objection by appellant Michele M. Copperud, the natural mother, that are in issue.

[3] Minn. St. 259.24, subd. 1(b), provides: "Consent shall not be required of a parent who has abandoned the child, *or of a parent who has lost custody of a child through a divorce decree * * *.*" (Italics supplied.) The italicized phrase is not applicable to this case, notwithstanding the award of custody to respondent Rollo in the uncontested divorce decree, since the statute has been construed to mean that parental rights are in such case extinguished only if the noncustodial parent's unfit-

or if her "parental rights to the child [had] been terminated by a juvenile court," § 259.24, subd. 1(c). The conditions for non-consensual termination of parental rights by the juvenile court are stated in § 260.221(b), which in relevant part requires a sustainable finding:

"(1)   That the parents have abandoned the child; or

\*   \*   \*   \*   \*

"(4)   That the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, *or other conduct found by the court to be likely to be detrimental to the physical or mental health or morals of the child * * *.*" (Italics supplied.)

The court did not find that Michele had abandoned her child, but it did find, in terms of the italicized language of § 260.221(b) (4):

"6.   Michelle is unfit by reason of conduct found by the Court to be likely to be detrimental to the physical or mental health of the child in that she is so unstabilized herself and so unable to provide a continuing, regular, and meaningful relationship with him." [4]

---

ness was actually adjudicated in the divorce proceedings. See, In re Petition of Parks, 267 Minn. 468, 474, 127 N. W. 2d 548, 553 (1964), and In re Petition of Wilson v. Barnet, 275 Minn. 32, 34, 144 N. W. 2d 700, 702 (1966).

[4] The findings preliminary to that ultimate finding were that: "2. In the summer of 1964, Michelle left Rollo, taking Troy with her. She moved about rootlessly and then, in August, 1964, realizing that this was not good for Troy, she brought him to Rollo, intending to re-assert custody when she had settled down. Rollo was then living with his mother who provided the day-to-day care for Troy.

"3.   Between August and December, 1964, Michelle did not attempt to visit Troy. In December, 1964, Rollo and Michelle entered into negotiations for a divorce, she refusing to stipulate custody to him. In January, 1965, Rollo was granted a default divorce with custody at a hearing of which Michelle states she was unaware.

"4.   Michelle visited every few weeks, usually on Sunday afternoons,

The dispositive issue narrows, therefore, to whether the evidence supports this ultimate finding of present unfitness within the sense of the statute.

We do not undertake to interpret with precision the nature of the "other conduct" provision of § 260.221(b)(4). It is clear from the court's findings that Michele's conduct was not on the level of "debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior." The "other conduct" need not be morally wrong, however, for the statute speaks, in the disjunctive, of conduct detrimental "to the physical or mental health or morals" of the child. We indicated by marginal notation in In re Petition of Wilson v. Barnet, 275 Minn. 32, 37, 144 N. W. 2d 700, 704 (1966), that "ignoring one's children may be equally deleterious to their care, protection, health, and morals," although the equation was to failure of financial support, § 260.221(b)(3), and not to parental unfitness, § 260.221(b)(4). Michele's visitation with her child was, at best, sporadic, but, as in In re Petition of Eggert, 279 Minn. 31, 155 N. W. 2d 454 (1967), the nonvisitation was explained, an explanation apparently not discredited by the juvenile court. Although Michele had "moved about rootlessly" in 1964, neither

---

with increasing acrimony and mutual recriminations as to visits denied and visiting appointments broken. In the summer of 1965, vain attempts were made at reconciling the marriage. In October, 1965, Michelle was so upset about the visitation problems that she left the state until March, 1966. Thereafter visits were resumed about once or twice a month with continuing unpleasantness until December, 1967, when Rollo married Elaine, the other Petitioner herein. Since then, she virtually ceased visiting, initially to give Troy a chance to work into the new marriage and thereafter because visiting became too unpleasant.

"5.  In November, 1966, and July, 1967, Michelle purchased insurance policies on her life with Troy as beneficiary. In July, 1967, Michell bought a $25.00 United States savings bond payable to Troy on her death. She bought a total of four similar bonds in 1967, 1968, and 1969 payable on her death to her father with an oral understanding he would give the money to Troy. She sent Troy various remembrances on holidays."

the record nor the findings of the court indicate that her remarriage in 1968 to a high school sociology teacher with residence in another city was not a rooted relationship in a changed personal and social environment.

The present record does not persuade us that respondents have met their burden of overcoming the presumption that appellant is fit to have the care, custody, and control of her own child. Cf. In re Petition of Wilson v. Barnet, 275 Minn. 32, 35, 144 N. W. 2d 700, 703 (1966). As we said in In re Petition of Eggert, 279 Minn. 31, 36, 155 N. W. 2d 454, 458 (1967), "In the absence of evidence of unfitness which would warrant severance of the parent-child relationship in the interest of the child's welfare, the right of the natural parent who initially loses custody of a child as a result of a divorce decree should not be extinguished so as to prevent such parent from seeking custody in the event of death, subsequent divorce, or other changes in circumstances of the prevailing party." Appellant's natural rights, as the mother of Troy, are of such fundamental importance that she should not be deprived of them except for "grave and weighty reasons," In re Petition of Parks, 267 Minn. 468, 474, 127 N. W. 2d 548, 553 (1964).

The juvenile court found that Michele is "unstabilized" and she concedes that her conduct was "erratic" in the past. However, we think the record falls short of demonstrating that she is not now able to provide "a continuing, regular, and meaningful relationship" with her child—except for the circumstance that her child is in the custody of his father in another city—or that her prior conduct or unstablized condition is "likely to be detrimental to the physical or mental health of her child." There is little, if any, evidence that her conduct or condition has adversely influenced her child. We reverse the decrees of termination and adoption and in the best interests of the child grant a new trial so that appellant's present situation and that of her child may be more intensively appraised by the juvenile court

before it grants or denies the petition to terminate her parental rights on statutory grounds.

Reversed and remanded for a new trial.