In the Matter of the WELFARE OF Baby Girl ROSENBLOOM a.k.a. Dawntrell Rosenbloom and Baby Boy Young a.k.a. Donnell Maceena Young.

RAMSEY COUNTY WELFARE DEPARTMENT, Respondent,

v.

Myrtis YOUNG, Appellant.

No. 47466.

Supreme Court of Minnesota.

June 2, 1978.

---

Robert N. Schlesinger, St. Paul, for appellant.

William B. Randall, County Atty., James McNulty, Asst. County Atty., St. Paul, for respondent.

PER CURIAM.

Appeal by Myrtis Rosenbloom Young from an order of the Ramsey County District Court, Juvenile Court Division, terminating her parental rights to Dawntrell Rosenbloom, who was placed in the legal custody of the Ramsey County Welfare Department as a dependent child in December 1970 when she was 3 months old, and to Donnell Young, who has also been under the custody of the welfare department almost since his birth in October 1972. Appellant contends that the due process clause of the Fourteenth Amendment requires that the grounds for termination of parental rights must be proved beyond a reasonable doubt. She urges also that findings of the juvenile court do not have evidentiary support and that there is no specific finding which clearly conforms to the statutory grounds for termination of parental rights.

Initially, we reject appellant's constitutional claim, as did the New York City Family Court in *Matter of Orzo,* 84 Misc.2d 482, 374 N.Y.S.2d 554 (1975). It is established that proof beyond a reasonable doubt is required in criminal cases because of the loss of liberty following a conviction and also because of the stigma resulting from it. These consequences are so serious that this strict standard of proof is constitutionally required to reduce the possibility of convicting the innocent. See, *Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460, 1472 (1958); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). The beyond-a-reasonable-doubt standard of proof has also been applied recently in determining whether a person should be committed to a mental institution. E. g., *In re Ballay,* 157 U.S.App.D.C. 59, 482 F.2d 648 (1973); *Lessard v. Schmidt,* 349 F.Supp. 1078 (E.D.Wis. 1972). See, also *Lausche v. Commr. of Public Welfare,* 302 Minn. 65, 69, 225 N.W.2d 366, 369 (1974). In such cases also, the person who is the subject of the proceeding may lose his liberty. The same consequence does not attend the termination of parental rights. Moreover, it is not clear that justice would be served by applying this standard of proof in such proceedings. Its use might instead exalt the parents' rights and ignore the child's welfare. As the court stated in *In re Adoption of Anderson,* 235 Minn. 192, 200, 50 N.W.2d 278, 284 (1951):

" * * * Parental rights, however, are not absolute and are not to be unduly exalted and enforced to the detriment of the child's welfare and happiness. The right of parentage is not an absolute right of property, but is in the nature of a trust reposed in them, and is subject to their correlative duty to protect and care for the child. The law secures their parental right only so long as they shall promptly recognize and discharge their corresponding obligations."

At the same time we do not minimize the serious character of a proceeding to terminate parental rights. This court has recognized that the rights of parents to the custody and companionship of their children are substantial and fundamental and that a parent should not be deprived of them "except for grave and weighty reasons." *McDonald v. Copperud,* 295 Minn. 440, 444, 206 N.W.2d 551, 553 (1973); *In re Petition of Parks,* 267 Minn. 468, 474, 127 N.W.2d 548, 553 (1964). Although the Juvenile Court Act, Minn.St. 260.011 to 260.301, does not specify the degree of proof required to terminate parental rights, and this court has not explicitly done so in past cases, consideration of those cases reveals that in fact we have required clear and convincing proof to uphold their termination.[1] We now hold explicitly that this

1. Although in *In re Welfare of Staat,* 287 Minn. 501, 178 N.W.2d 709, 710 (1970), we stated that an order terminating parental rights was supported by the evidence "regardless of whether

degree of proof is required to justify termination of parental rights.

■ Our review of the record here satisfies us that the petitioner met this burden of proof. The proceedings leading to the order arose out of the following circumstances and events. Appellant has been afflicted with epilepsy since childhood and was forced to stop attending school in the sixth or seventh grade. She has marginal mental competence and is not employed. Dawntrell was removed from appellant's physical custody at 3 months and Donnell was placed in foster care shortly after his birth in 1972. In January 1973 both children were determined to be dependent because they were without proper parental care because of the mental, emotional, or physical disability of appellant,[2] this condition being described as the epilepsy which resulted in seizures from 10 to 15 minutes, appellant's mental dullness, and an antisocial personality. One ill-planned attempt at reuniting appellant and the younger child in a group home in August 1973 was unsuccessful.

In December 1973 the welfare department filed a petition seeking termination of appellant's parental rights on the grounds set forth in § 260.221(b)(2) and 260.-221(b)(5), that appellant had failed to give the children proper parental care and that reasonable efforts under the direction of the court had failed to correct the conditions leading to the dependency determination.[3]

Following trial in May 1974, the petition was denied. The court found that the children were still dependent because of appel-

lant's epilepsy and her mental incapabilities and that appellant "would have to modify her hostile and disruptive behavior of the past, demonstrate some maternal affection for her children, and become reasonably competent in skills of child care" before they could be returned to her. The court also found that the welfare department had failed to make reasonable efforts to reunite appellant and the children and ordered counsel for the parties to confer with the juvenile court judge and develop a written plan "reasonably calculated" to achieve that goal.

The parties thereafter entered into a stipulation providing that appellant was to receive intensive psychiatric services from Dr. Willmar Pew; Gail Cerioni, a social worker for the welfare department was to have overall responsibility to manage plans for appellant's rehabilitation and assumption of the children's custody and was to develop a plan to teach her homemaking and childcare skills; and appellant was to have open visitation with her children upon reasonable notice to the foster parents. It was also agreed that the parties would search for a suitable foster home in which appellant could live and raise her children. The plan was approved in September 1974 by the juvenile court.

Dr. Pew was unwilling to work with appellant, however, and the plan was modified on October 31 (after a continuance caused by her failure to appear at an earlier hearing) to provide that appellant should receive psychiatric services at the Community Mental Health Center. She agreed to this

---

the standard of proof required for the finding is a preponderance of the evidence or clear and convincing proof," the evidence in fact satisfied the latter standard of proof.

**2.** Minn.St. 260.015, subd. 6(d), defines "dependent child" as one who "is without proper parental care because of the emotional, mental, or physical disability, or state of immaturity of the parent, guardian, or other custodian."

**3.** Minn.St. 260.221 provides in part: "The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

\* \* \* \* \* \*

"(b) If it finds that one or more of the following conditions exist:

"(2) That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection; or

\* \* \* \* \* \*

"(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

change although she had earlier expressed dislike for the mental health center. The matter was set for review on January 16, 1975.

Appellant was not present at this hearing, and her attorney explained that the man with whom she had been living had died a few days earlier and that her husband, the father of Donnell, had also recently died. Ms. Cerioni reported that appellant had missed all her appointments at the mental health center except one to which Ms. Cerioni had taken her, had asked to visit her children only once although Ms. Cerioni had stressed to her the importance of visiting them, and had not called the foster parents to inquire about the children's welfare. At the next scheduled hearing on February 13, appellant again did not appear. She had made no appointments at the mental health center and had visited the children only under initiation by the welfare department. The court ordered the welfare department to make specific appointments for appellant at the mental health center and to transport her to and from the center. It also ordered that "efforts should be made when possible to educate [appellant] in the necessary mothering skills to take care of her children."

Continuances followed for several months. On May 8, 1975, the court ordered the welfare department to arrange an interview for appellant at the mental health center with Dr. John Scanlan, a psychiatrist, and to have his report available at the hearing on May 29. On that date the doctor's report was not ready and the hearing was continued to July 10. At that time the court found that the children continued to be dependent and set another review hearing for September 18.

On August 7, however, the welfare department filed a second petition seeking termination of appellant's parental rights on the same grounds alleged in the first one. Following a trial on this second petition some 15 months later, the juvenile court found that appellant was at least marginally competent and could assume physical custody of her children if she followed medical directions, but that her hostile and disruptive behavior had continued; [4] and that the welfare department had attempted to correct the conditions leading to the June 1974 dependency determination by arranging appointments with the mental health center, attempting to cooperate with appellant to arrange visits with the children, and counseling her to the end of consistency in her conduct toward and visits with her children. The court concluded that the children were still dependent and that the findings summarized above compelled the conclusion that the children's best interests demand termination of appellant's parental rights.

Contrary to appellant's claim, the record reveals evidentiary support attaining the quantum of clear and convincing proof for the foregoing findings. We conclude that they support the termination of her parental rights, despite the fact that appellant's contention that none of the findings specifically conforms to the statutory grounds for termination of parental rights has some apparent merit. See, *In re Petition of Zerby,* 280 Minn. 544, 160 N.W.2d 255 (1968). The findings in this case are not couched in the language of § 260.221, but, unlike the finding in *Zerby,* they clearly establish the existence of a statutory ground for termination—that set forth in § 260.221(b)(5): That reasonable efforts, under the direction of the court, to correct the conditions leading to the dependency determination made in June 1974 have failed to correct the conditions leading to the determination. We are therefore compelled to affirm the order terminating appellant's parental rights.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

---

**4.** The court found this behavior consisted specifically of appellant's refusals to make or keep appointments at the mental health center, missing appointments for visiting the children and refusing to take a bus to see her son or to walk a few blocks to see her daughter, spending little time with the children when she did visit, ignoring advice from Ms. Cerioni to visit or at least call to inquire about the children's welfare, changing residences and male companions frequently, and refusing to maintain regular contact with her caseworker.