In the Matter of the WELFARE OF
J. W. M.

No. 49789.

Supreme Court of Minnesota.

March 21, 1980.

William R. Kennedy, County Public Defender, and Patrick J. Sullivan, Asst. Public Defender, Minneapolis, for appellant.

Thomas L. Johnson, County Atty., and Robert W. Gyurci, Asst. County Atty., Minneapolis, for Hennepin County Welfare Department.

John G. Bell, St. Paul, for Melvin and Lois Perkins.

Oakes & Miller and Judith Oakes, St. Paul, for Subject Child.

John C. Bohanon, Minneapolis, for Hallquists.

ROGOSHESKE, Justice.

Geraldine McEachran, natural mother of J.W.M., appeals from an order of the juvenile division of the Hennepin County District Court granting the petition of Melvin and Lois Perkins to adopt J.W.M. The critical issue is whether the trial court's findings of fact justify termination of parental rights under Minn.Stat. § 260.221(b)(5) (1978). We hold that the findings neither explicitly nor by implication declare, as required, that following a determination of neglect reasonable efforts under the direction of the court have failed to correct the conditions leading to the finding of neglect. Accordingly, we reverse.

On April 17, 1976, Geraldine McEachran, age 23, gave birth to a son, J.W.M. On May 2, 1976, Geraldine asked her aunt and uncle, Lois and Melvin Perkins, to care for her child. They agreed, and J.W.M. re-

mained with the Perkinses, with Geraldine's consent, for approximately 9 of the first 11 months of his life.

On April 12, 1977, the Hennepin County Welfare Department filed a neglect petition requesting that custody of J.W.M. be transferred to the welfare department. Following a hearing on this petition, the court found that the mother had left the child with relatives, "paying him little attention, giving him no continuing love or care"; that the mother lacked vocational skills, was unable to hold a job, and could not provide financial support; and that the father had no interest in the child. Concluding that the father had abandoned the child, that the mother had "virtually" abandoned the child, and that both parents had neglected to provide J.W.M. with care necessary for his health, the court on July 21, 1977, transferred legal custody to the welfare department but ordered that physical custody remain with the Perkinses. The court also imposed certain requirements on the mother: (1) chemical dependency evaluation and participation in the recommended treatment; (2) participation in parenting counseling; (3) maintenance of her own residence at least one-half mile distant from that of her parents and self-support from earnings or, alternatively, support from public funds while receiving vocational training; and (4) weekly visits with the child.

On March 30, 1978, the welfare department filed a petition to terminate parental rights, alleging the five statutory grounds set out in Minn.Stat. § 260.221(b)(1–5) (1978). Prior to the hearing on the petition, the Perkinses and Marion and Hjalmer Hallquist, Geraldine's parents, filed petitions to adopt J.W.M. The court conducted a hearing solely on the petition to terminate parental rights, reserving the adoption petitions for subsequent consideration. On August 1, 1978, the court granted the petition and made specific findings as to the moth-

er's compliance with the requirements imposed at the time of the neglect proceeding. The court found that the mother had not been evaluated or treated for chemical dependency but that there was no current evidence of chemical abuse or dependency; that the mother had not attended all parenting counseling sessions but that she had not done so because she felt them to be without value since she, unlike the other participants, did not have her child in her custody and she expressed a willingness to participate if she had custody; that the mother demonstrated her inability to care for herself by failing to maintain her own residence and pay her living expenses from earnings; that the mother was obtaining vocational training; and that the mother had substantially complied with the visitation order. In addition, the court found that the mother was an "inadequate person" who, without her parents' supervision, could not manage to care for herself and that the child's best interests required his placement in a stable and permanent home. The mother attempted to appeal from this order, but we dismissed the appeal on procedural grounds.

On November 6, 1978, the hearing commenced on both adoption petitions. On that date the mother sought relief in the United States District Court for the District of Minnesota. Federal action was stayed pending the mother's exhaustion of remedies in this court. The adoption proceedings resumed in January 1979 and, following extensive testimony, the court granted the petition of the Perkinses and denied that of the Hallquists. The mother appealed from the adoption decree, challenging termination of her parental rights.[1]

Minn.Stat. § 260.221(b) (1978) specifies the various conditions under which a court may terminate parental rights. Although the trial court did not recite a specific statutory ground for terminating parental

---

1. In *McDonald v. Copperud*, 295 Minn. 440, 441, 206 N.W.2d 551, 552 (1973), we stated that the "validity of the decree of adoption over the objection of the child's natural parent * * * hinges upon the validity of the decree terminat-

ing [the parent's] parental rights." We, therefore, reviewed an order terminating parental rights on an appeal from a subsequent decree of adoption.

rights, the provision conceded by the parties to be relevant to these facts and apparently relied upon by the trial court, § 260.-221(b)(5), states that parental rights may be terminated if the court finds "[t]hat following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination." The court found that the mother had failed to comply with four of the requirements imposed upon her following the adjudication of neglect. The findings indicate, however, that noncompliance with the requirements of chemical dependency evaluation and participation in parenting counseling were excused by the court since there was no evidence that the mother abused chemicals and parenting counseling was of little value without custody of the child. The court instead relied upon the mother's noncompliance with the requirements that she maintain her own residence and that she pay her own living expenses.

■ We have often stated that we exercise great caution in reviewing orders terminating parental rights. *In re Welfare of Kidd*, 261 N.W.2d 833 (Minn.1978); *In re Welfare of Clausen*, 289 N.W.2d 153 (Minn. 1980). On this record we cannot conclude that the trial court's findings comply with the stringent standards recently summarized in *In Matter of Welfare of Chosa*, 290 N.W.2d 766 (Minn.1980). We are unaware of any legal requirement that a parent maintain a separate residence for herself and her child when there is no claim that the persons involved in the group living situation have a harmful effect on the child's health or morals and the dwelling is adequate. We are also unaware of any legal basis for requiring that a parent, whose earnings are marginal or nonexistent, support herself and her child by her earnings. We conclude, then, that the court was without authority to impose these requirements on the mother and that her failure to comply with them cannot provide a basis for terminating her parental rights. We note that the court's additional findings indicate that while living in her parents' home and receiving their supervision of her

financial matters the mother functions adequately.

■ The only remaining concern of the trial court is the child's best interest, expressed by the trial court in these words:

Despite the mother's good intentions and her great love and devotion for her child, it does not appear that the mother in the foreseeable future will be able to provide a home for herself and her child. In the best interests of the child, therefore, the parental rights of his parents are terminated in order that the child may be placed for adoption with adults who will provide him with consistency and stability for the balance of his childhood.

We have held that the child's best interest is not an independent ground for terminating parental rights. *Petition of Linehan*, 280 N.W.2d 29, 33 (Minn.1979).

The order granting the adoption petition is vacated; the order terminating parental rights is reversed.