Evangeline G. PARKER and Donald L. Parker, Petitioners,

v.

**HENNEPIN COUNTY DISTRICT COURT, FOURTH JUDICIAL DISTRICT, Respondent.**

No. 49399.

Supreme Court of Minnesota.

Oct. 5, 1979.

---

Collins & Buckley and Mark W. Gehan, Jr., St. Paul, Segal & Roston and David G. Roston, Minneapolis, for petitioners.

Carlsen, Greiner & Law, Robert P. Christensen, Minneapolis, for respondent.

SHERAN, Chief Justice.

This appeal arises from a petition for mandamus to compel the Hennepin County District Court, Fourth Judicial District, to vacate its order of September 12, 1978. By that order, the district court deemed admitted requests for admission which petitioners refused to answer on Fifth Amendment grounds. We deny the petition for mandamus and affirm the order of the district court.

Respondent Adolfson & Peterson, Inc. (A & P) sued petitioners Evangeline and Donald Parker (the Parkers) for the conversion of approximately $100,000 during the period Evangeline Parker was employed by A & P as a payroll clerk. A & P, in preparing for the lawsuit from which this appeal originates, sought to depose orally the Parkers. The Parkers refused to cooperate, claiming the Fifth Amendment privilege against self-incrimination. A & P next filed a motion in the district court to compel discovery but failed to elicit that court's support. A

& P then served upon the Parkers extensive requests for admission. Following the Parkers' refusal to answer the requests for admission, the district court granted A & P's motion to deem the requests admitted. The Parkers now petition the court to vacate by writ of mandamus the order deeming the unanswered requests admitted.

The Parkers base their Fifth Amendment claim upon the threat that a collateral federal tax fraud prosecution could be fueled by the admissions. The Internal Revenue Service has audited the Parkers, and an IRS agent has contacted them concerning possible criminal tax fraud violations.

The Parkers have been requested to admit that Mrs. Parker issued checks to companies not creditors of A & P to satisfy personal obligations that she and her husband incurred in improving property belonging to them. Although the effect of the admissions in prompting a tax fraud prosecution is speculative, counsel for Mrs. Parker asserts by affidavit his belief that answering the admissions would provide a significant link in a chain of evidence that would increase the likelihood of her prosecution. By affidavit, her husband's counsel indicates that Mrs. Parker has been advised of her rights as per *Miranda v. Arizona*. Although the IRS has been noncommittal about a prosecution of Mr. Parker, according to his attorney, such a prosecution is likely.

It is our opinion that a court order which deems admitted allegations in a request for admission does not violate the Fifth Amendment rights of the party upon whom the request was served, nor Article I, Section 7 of the Minnesota Constitution.

It is well-settled that the Fifth Amendment right against self-incrimination may be invoked in civil as well as criminal proceedings. *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); *see also Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), applying that right to the states through the Fourteenth

Amendment of the United States Constitution. In Minnesota, this court has had particular occasion to acknowledge its availability in any stage of a state civil proceeding. *Minnesota State Bar Ass'n v. Divorce Assistance Ass'n,* 311 Minn. 276, 248 N.W.2d 733 (1976).

In civil cases, the right to plead the Fifth Amendment is not absolute. The availability of the right is delineated by the Fifth Amendment's prohibition against compulsed testimony in *criminal* cases. The Fifth Amendment, therefore, may only be invoked when testimony in a civil case would enhance the threat of criminal prosecution such that reasonable grounds exist to apprehend its danger. *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *Blau v. United States,* 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950).

■ The interdiction of this constitutional safeguard in civil cases must be balanced against the purposes and policies supporting the discovery rules. Minn.R.Civ.P. 26.02 provides that parties may only obtain discovery regarding matters not constitutionally privileged (Advisory Comm. Note (1):1975), but Rule 26.02 is not intended to allow the exploitation of the Fifth Amendment to unfairly prejudice an adversary in a civil case. This court will not permit a plaintiff to use the judicial forum to make allegations only to later insulate himself by invoking the Fifth Amendment as a shield from cross-examination. *See, e. g., Minnesota State Bar Ass'n v. Divorce Assistance Ass'n, supra.* As we have previously stated: "* * * a person ought not to be permitted to divulge only that part of the story favorable to his or her position and thus present a distorted and misleading picture of what has really happened." *Christenson v. Christenson,* 281 Minn. 507, 520, 162 N.W.2d 194, 202 (1968).

Invocation of the Fifth Amendment by a civil defendant, however, requires a more subtle response because of the involuntary nature of a defendant's participation in a lawsuit, and the appearance of compulsion. Nevertheless, courts have been able to safeguard the constitutional foundation of the privilege "without permitting the civil defendant to gain an unfair advantage—especially since, in private civil litigation, the plaintiff's only source of evidence is frequently the defendant himself, and since the type of case where the privilege is most frequently asserted * * * involve[s] intentional and often malicious conduct." Kaminsky, *Preventing Unfair Use of the Privilege Against Self-Incrimination in Private Civil Litigation: A Critical Analysis,* 39 Brooklyn L.Rev. 121, 149 (1972). Thus, in some situations where a civil defendant has refused to answer on Fifth Amendment grounds, courts have struck his pleadings, counterclaims or affirmative defenses, entered judgment against him, or compelled him to repeat his refusal to answer or read his deposition in front of the jury. *See,.e. g., Molloy v. Molloy,* 46 Wis.2d 682, 176 N.W.2d 292 (1970); *Grognet v. Fox Valley Trucking Service,* 45 Wis.2d 235, 172 N.W.2d 812 (1969); *Rubenstein v. Kleven,* 150 F.Supp. 47 (D.Mass.1957). Such sanctions do not punish a defendant for his assertion of the privilege, but for his failure to answer as he typically would have under normal circumstances.

Recently, in *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the United States Supreme Court reversed the First Circuit and allowed a district court to draw adverse inferences from a defendant's failure to answer under cover of privilege. An adverse inference in a civil case cannot have any effect or be revealed in subsequent criminal proceedings. The Supreme Court therefore found "that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." 425 U.S. at 318, 96 S.Ct. at 1558.

To deem an answer admitted has much the same effect as allowing an adverse inference; it is a procedural device used to focus the matter at issue and thereby expedite the trial of the case. Admissions have no life outside the pending litigation and cannot support a subsequent criminal prose-

84

cution, nor have any other collateral effect. Minn.R.Civ.P. 36.01. Hence, to deem an answer admitted during the course of a civil litigation does not violate any of the policies underlying the Fifth Amendment. Accord, *Phelps Dodge Corp. v. Superior Court,* 7 Ariz.App. 277, 438 P.2d 424 (1968).

In *Berg v. Penttila,* 173 Minn. 512, 217 N.W. 935 (1928), defendant was prosecuted under the Corrupt Practices Act of 1923. Although the statute provided for criminal sanctions, because the particular action was initiated by the electorate, defendant suffered only civil punishment. On appeal this court found the trial court's admission of adverse inferences in respect to defendant's assertion of his Fifth Amendment privilege impermissible. Because the statute in *Berg* was criminal, but the penalty civil, determining the rubric under which it falls is problematic. In light of our more recent pronouncements, and the decision of the United States Supreme Court in *Baxter v. Palmigiano, supra,* to the extent that *Berg* is inconsistent with the holding in the instant case, it is overruled.

Reasonable grounds exist for petitioners in the case at bar to apprehend the danger of criminal prosecution; affidavits of both petitioners' attorneys attest to this probability. Petitioners' invocation of the Fifth Amendment thus satisfies the requirements outlined by the United States Supreme Court and the Minnesota Supreme Court. As such, petitioners need not respond to the requests for admission. But for a court to deem an answer admitted does not violate the constitutional safeguard against self-incrimination. Moreover, doing so bolsters the rationale behind Minnesota's rules of civil discovery.

In view of the above considerations, the petition for writ of mandamus is denied and the order of the district court affirmed.