In the Matter of the WELFARE OF
J.W. and A.W.

Nos. C8–85–119, C9–85–131.

Court of Appeals of Minnesota.

Sept. 17, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Ann Stiehm Ahlstrom, Asst. Co. Atty., Minneapolis, for respondent.

Thomas H. Shiah, William R. Kennedy, Hennepin Co. Public Defenders, David M. Duffy, Asst. Public Defender, Minneapolis, for appellant.

Wright Walling, Randy L. Decker, Minneapolis, for Guardian ad Litem.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This is the consolidated appeal of two parents from an order finding that their two children, J.W. and A.W., were dependent and neglected, and ordering that the children be placed in foster care.

## FACTS

Appellants have two children, A.W., age two, and J.W., age three. H.L., the two-year-old nephew of the appellants, came to stay with appellants. A week later, appellants brought him to the hospital. His abdomen was seriously injured, and he died a few days later. The county brought a petition alleging that appellants' children were dependent and neglected. After a trial, the court found that the children were at risk and were both dependent and neglected. No criminal prosecution has been initiated.

Appellants appeared at a court-ordered deposition on July 25, 1984. Both refused to answer substantive questions, directed mainly toward H.L.'s death, on fifth amendment grounds. The court ordered sanctions for failure to comply with discovery, including taking as established the matters which appellants refused to address, and denying appellants the opportunity to oppose those matters. At trial, appellants were not allowed to challenge the state's case by presenting evidence or testimony from witnesses regarding these matters, and could not cross-examine any of the state's witnesses.

The state presented testimony by a physician who examined and treated H.L., a social worker who was present at an interview of appellants by a police officer, and the Hennepin County medical examiner.

The trial court found that one or both appellants caused H.L.'s death because the infliction of the injury was not accidental, the severity indicated adult-like strength, and the appellants were the only adults present in their home from the evening of

September 14 through the time they departed to bring H.L. to the hospital. It was found that appellants did not give the hospital an accurate medical history, and therefore did not aid in his expeditious receipt of proper treatment. The court found that the parties have a history of violence with each other, based on the statements in the mother's affidavit in support of a domestic abuse petition.

The court found that because of the parties' history of violence, the unexplained violent homicide of a two-year-old child for whom the appellants were responsible, and the children's tender years and natural vulnerability, J.W. and A.W. are at high risk for physical abuse.

Dependency and neglect findings were based on provisions of Minn.Stat. § 260.-015, subd. 6(d) and § 260.015, subd. 10(b).

### ISSUE

Did the trial court err in its choice of discovery sanctions, where appellants' refusal to answer discovery questions was based on their fifth amendment right not to incriminate themselves?

### ANALYSIS

The appellants invoked the fifth amendment and refused to answer questions put to them at a court-ordered deposition regarding the circumstances of H.L.'s injury and death. Under juvenile court rules, if a party fails to obey a discovery order, the court may take such actions "as are just," including:

(a) an order that the matters regarding which the order was made, or any other designated facts, shall be taken to be established for purposes of the proceeding, in accordance with the claim of the participant who obtained the order, or

(b) an order refusing to allow the disobedient participant to support or oppose designated claims, or prohibiting the disobedient participant from introducing designated matters in evidence, or

(c) an order striking the petition or parts thereof, or staying further proceedings until the order is obeyed or dismissing the proceeding or any part thereof, or rendering a judgment by default against the disobedient participant, or

(d) in lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

Minn.R.Juv.Ct.P. 57.10, subd. 4 (1984).

The trial court here acted under subdivision (a) and (b) of the rule, ordering:

1. That the matters regarding which [appellants] invoked their Fifth Amendment right are taken as established for purposes of this proceeding in accordance with the claim of [the state].

2. That [appellants] shall not be allowed to oppose those matters regarding which they invoked their Fifth Amendment right.

At trial, this order was interpreted to mean that appellants could not challenge the state's case by presenting evidence of their own, could not present testimony from witnesses regarding those matters, and could not cross-examine any of the state's witnesses. Appellants challenge the constitutionality of this application of Rule 57.10, subd. 4; they do not question the constitutionality of the rule.

The fifth amendment right against self-incrimination may be invoked in civil as well as criminal proceedings. In Minnesota, it may be asserted at any stage of a civil proceeding. *Parker v. Hennepin County District Court, Fourth Judicial District*, 285 N.W.2d 81, 82–83 (Minn.1979). To invoke the right in civil proceedings, it must be evident that the party's testimony "would enhance the threat of criminal prosecution such that reasonable grounds exist to apprehend its danger." *Id.* at 83. Appellants, who could be subject to criminal charges for H.L.'s death, properly invoked the fifth amendment.

*Parker* cautioned that while the policies underlying the fifth amendment must be safeguarded, this does not permit exploitation of the privilege "to unfairly prejudice an adversary in a civil case." *Id.* One who seeks relief cannot "eat his cake and have it too," and his choice to invoke the fifth amendment justifies dismissal of his claim. *Christenson v. Christenson,* 281 Minn. 507, 521, 162 N.W.2d 194, 203 (1968). Similarly, where a witness claims the privilege in a civil case, his testimony may be stricken. *Id.* at 515, 162 N.W.2d at 199. This limit on interdiction of the privilege is more compelling when a plaintiff supports a claim with a partial disclosure of facts; a more subtle response is required toward a defendant's assertion of the privilege, because he participates involuntarily, but a defendant will not be permitted to "gain an unfair advantage" by withholding important information. *Parker,* 285 N.W.2d at 83; *see Christenson,* 281 Minn. at 518, 162 N.W.2d at 201. Allowing discovery sanctions in some situations "[does] not punish a defendant for his assertion of the privilege, but for his failure to answer as he typically would under normal circumstances." *Parker,* 285 N.W.2d at 83.

The court held in *Parker* that defendants need not respond to requests for admission since the fifth amendment was properly invoked, but "for a court to deem an answer admitted does not violate the constitutional safeguard against self-incrimination. Moreover, doing so bolsters the rationale behind Minnesota's rules of civil discovery." *Id.* at 84. The supreme court found that deeming a discovery allegation admitted is no different than allowing an adverse inference from a refusal to answer, a sanction approved by the United States Supreme Court. *Id. See Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *see Ralph Hegman Co. v. Transamerica Insurance Co.,* 293 Minn. 323, 198 N.W.2d 555 (1972).

Here, therefore, the trial court could deem the answers to the depositions admitted. It should be noted that those answers alone would be insufficient to find against appellants; there must be substantial other evidence on the record to support the decision. *Baxter,* 425 U.S. at 317, 96 S.Ct. at 1557. In this case there was substantial evidence which would support the trial court's findings.

Appellants contend, however, that denial of the right to confront and cross-examine adverse witnesses or to present their own evidence denied them due process rights. *See* U.S. Const. amend. XIV; Minn. Const. art. I, § 7. The due process standard in juvenile proceedings is "fundamental fairness." *McKeiver v. Pennsylvania,* 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L.Ed.2d 647 (1971).

We have held in a parental termination matter that it "violates fundamental fairness" to deny a parent's opportunity to present testimony on his own behalf and to confront and examine witnesses appearing against him. *In re Welfare of L.J.B.,* 356 N.W.2d 394, 397 (Minn.Ct.App.1984). The United States Supreme Court has stated:

> In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.

*Goldberg v. Kelly,* 397 U.S. 254, 269–70, 90 S.Ct. 1011, 1021–22, 25 L.Ed.2d 287 (1970) (citations omitted). Likewise, due process commonly requires the opportunity to be heard, which includes the opportunity to present evidence. *Id.* at 267–68, 90 S.Ct. at 1020–21.

Are allegations of dependency and neglect sufficiently important to arouse the right to be heard and to confront adverse witnesses? We conclude they are, having regard for settled matters of Minnesota law. It is among the basic purposes of our dependency and neglect laws "to preserve and strengthen the child's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety cannot be adequately safeguarded without removal." Minn.Stat.

§ 260.011, subd. 2 (1984). Consistently, the Minnesota Supreme Court observes:

> Ordinarily, parents are entitled to the custody of their child. Every court recognizes the deep and enduring affection which parents have for their children and their willingness to make sacrifices and endure hardships in their interests which a stranger would not consider. * * * The sanctity of the home and the maintenance of family life form the foundation of our society and are of paramount importance now as in the past.

*State ex rel. Ashcroft v. Jensen,* 214 Minn. 193, 195, 7 N.W.2d 393, 394–95 (1943).

Due process rights do not arise when the government's interest outweighs the threat to personal interests. *Goldberg,* 397 U.S. at 263, 90 S.Ct. at 1018. Public interest in protecting children is vitally important, but the threat to family interests outweighs any government interest to adjudicate dependency or neglect in summary proceedings, with denial of the parent's opportunity to present evidence or confront adverse witnesses.

Is there a risk of erroneous deprivation of family interests if parents are deprived of the rights to present evidence and cross-examine adverse witnesses? What is the probable value of those rights in a dependency and neglect case? These questions must also be considered when we examine the argument that due process rights have been denied. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). *See Lassiter v. Dept. of Soc. Serv. of Durham Cty.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640, *reh. denied,* 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981).

We conclude it is inappropriate to minimize the danger in refusing to hear information a party may wish to present on a difficult question of child neglect. That is especially true in this case, where the court tried to unravel the mystery of a child's death and had to measure neglect of two children without direct evidence as to the treatment of the children themselves. Because the trial court refused to hear offers of proof by either parent on evidential issues raised by the petitioner, it is even more difficult to minimize the impact of rulings limiting their participation. We believe appellants are correct in their contention that due process demanded protection of their rights to be heard and to examine witnesses.

Appellants argue that the trial court improperly forced them to give up their fourteenth amendment due process rights in exchange for their fifth amendment right not to incriminate themselves. *Parker,* discussed above, did not deal with a conflict of this kind. Here the effect of the trial court orders was not just to infer facts, a decision supported by *Parker,* but to stop the presentation of evidence and the questioning of witnesses whose testimony supports the party already favored by inferences of fact.

A state "may not impose substantial penalties because a witness elects to exercise his fifth amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977). This is true in spite of strong public interests for discovering facts. *Lefkowitz v. Turley,* 414 U.S. 70, 78–79, 94 S.Ct. 316, 322–23, 38 L.Ed.2d 274 (1973). It is true regarding penalties of imprisonment, economic penalties, and other "substantial" or "grave" consequences for refusing disclosure. *Cunningham,* 431 U.S. at 806–07, 97 S.Ct. at 2136–37. It is true of a penalty in the form of requiring appellants to "forfeit one constitutionally protected right as the price for exercising another." *Cunningham,* 431 U.S. at 807–08, 97 S.Ct. at 2136–37.

■ We hold that the order precluding appellants from cross-examining the state's witnesses or presenting witnesses of their own is unduly coercive. It required appellants to sacrifice their due process rights for the fifth amendment right not to incriminate themselves. *Id.*

Appellants also question whether the evidence was sufficient to support the trial

court's conclusion that the children were dependent and neglected, based on *In re Welfare of V.R., P.R., and L.R.,* 355 N.W.2d 426 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Jan. 11, 1985). Because of our decision, it is not necessary to decide the issue on this appeal.

### DECISION

It is unduly coercive to preclude the appellants from cross-examining witnesses or presenting evidence of their own as a sanction for invoking their fifth amendment right not to incriminate themselves. The matter is remanded for a new hearing consistent with this opinion.

Reversed and remanded.