COUNTY OF HENNEPIN on Behalf of
Tammie Lea BARTLOW,
petitioner, Appellant,

v.

Dennis BRINKMAN, Respondent.

No. C3–84–1605.

Supreme Court of Minnesota.

Dec. 13, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Mark Chapin, Asst. County Atty., Minneapolis, for appellant.

William R. Kennedy, Hennepin County Public Defender, David M. Duffy, Asst. Public Defender, Minneapolis, for respondent.

YETKA, Justice.

The County of Hennepin appeals from a court of appeals decision that reversed a Hennepin County District Court default

judgment in a parentage suit against Dennis Brinkman. The district court issued the default judgment, declaring Brinkman the father of a child born out of wedlock to Tammie Lea Bartlow, as a sanction for Brinkman's failure to appear for court-ordered blood tests. We reverse in part and affirm in part.

On October 3, 1983, appellant Tammie Lea Bartlow petitioned the Hennepin County District Court to adjudicate the parentage of her daughter and to require child support from the alleged father, Dennis Brinkman. Bartlow stated in her petition that she and Brinkman had sexual intercourse on May 1, 1982, which resulted in the birth of a child out of wedlock on January 31, 1983. Brinkman was served the petition and a summons and order to show cause on November 1, 1983. On December 28, 1983, Brinkman personally appeared before a referee of the Hennepin County District Court, Family Court Division, and requested a public defender.[1] The referee appointed a public defender and continued the matter until January 30, 1984. On January 30, at Brinkman's request, the district court referee ordered blood tests for both parties and the child. The court referee further ordered that the county pay for the tests which the Hennepin County Support and Collection Services would schedule and supervise. The parties were ordered to appear before the court again on June 8, 1984. The agency originally scheduled the blood tests for February 17, 1984, at the Minneapolis War Memorial Blood Bank. Brinkman was informed of the date, but failed to appear

and offered no explanation for his absence. The agency rescheduled the blood test for March 27, 1984, and, once again, Brinkman was absent without explanation. Based on Brinkman's failure to appear for the court-ordered blood tests, Bartlow moved for default judgment under Minn.Stat. § 257.62, subd. 4 (1984) (repealed 1985) and Minn.R. Civ.P. 37.02, subd. 2(c).[2] On June 8, a family court referee heard the motion. Brinkman was not present, but was represented by counsel. The referee granted the motion for default judgment, ordering that Brinkman be registered as the father of the child and issuing a warrant for his arrest in order to assure his personal appearance at child support hearings. The order was approved by the Hennepin County District Court, Family Court Division, and entry of judgment was stayed until June 22, 1984. The district court quashed the arrest warrant on June 14, 1984, and scheduled a child support hearing for July 5, 1984. On June 20, Brinkman requested that the district court review the referee's order. In addition, Brinkman filed an appeal with the Minnesota Court of Appeals.

At the July 5 hearing, the district court judge did not reverse the referee's judgment.[3] Apparently, another blood test was scheduled for July 26, 1984, but Brinkman again failed to appear. Upon stipulation of the parties, the court of appeals dismissed the July 2 appeal without prejudice. On September 6, 1984, however, Brinkman again appealed from the default judgment.

The court of appeals reversed the district court on March 19, 1985. *County of Hennepin on behalf of Bartlow v. Brinkman,*

---

1. The court of appeals stated that Brinkman served an answer denying paternity, but there is no such answer in the record. Neither party maintains that Brinkman served an answer. Brinkman states in his brief, however, that he made his answer by general denial when he appeared according to the summons. The December 28 order makes no reference to a general denial by Brinkman, but does verify that he appeared and requested a public defender.

2. Minn.Stat. § 257.62, subd. 4 provided: "The refusal to submit to blood tests or genetic tests, or both, may be admitted into evidence and is subject to the sanctions within the jurisdiction

of the court." Default judgment is one of the discovery sanctions found in Minn.R.Civ.P. 37.-02, subd. 2(c).

3. The record concerning the July 5 hearing provides no transcript or court order. There is only a transaction report showing that the hearing occurred and that the matter was adjudicated. Appellant maintains that, at the hearing, the district court found that it lacked jurisdiction due to the pending appeal, but suggested that the parties schedule a third blood test. Respondent does not dispute appellant's version of what transpired at the hearing.

364 N.W.2d 458 (Minn.Ct.App.1985). The court ruled that the district court abused its discretion in choosing a default judgment as a sanction for the violation of a discovery order in a parentage case. The court found that, under Minn.Stat. § 257.62, the correct sanctions are the admission of the evidence concerning the defendant's refusal to take the blood test or proceedings to compel submission to the test. The court further ruled that it was reversible error to order judgment without an evidentiary hearing when the defendant had answered the complaint.

The issues raised by this appeal are:

1. What effect does the repeal of Minn. Stat. § 257.62, subd. 4 have on this appeal?

2. Was the court of appeals correct in ruling that the Hennepin County District Court committed reversible error in ordering default judgment?

In 1980, the Minnesota Legislature enacted the Uniform Parentage Act in response to this court's opinion in *State on behalf of Ortloff v. Hanson*, 277 N.W.2d 205 (Minn. 1979),[4] *State on behalf of Kremin v. Graham*, 318 N.W.2d 853 (Minn.1982); *see* Parentage Act, ch. 589, 1980 Minn. Laws 1070 (codified at Minn.Stat. §§ 257.51–.74 (1984); Unif. Parentage Act, 9A U.L.A. 579 (1973 & Supp.1985). The legislature added Minn. Stat. § 257.62, subd. 4 to the original provisions of the uniform act as an enforcement provision for court-ordered blood tests: "The refusal to submit to blood tests or genetic tests, or both, may be admitted into evidence and is subject to the sanctions within the jurisdiction of the court." *Cf.* Unif. Parentage Act § 11, 9A U.L.A. 601 (1973 & Supp.1985). This court has upheld the constitutionality of section 257.62, subdivision 4. *Kremin*, 318 N.W.2d at 856. The legislature, however, repealed section 257.62, subdivision 4 effective May 1985. Act of May 17, 1985, ch. 131, § 15, 1985 Minn.Laws 371, 380. Thus, section 257.62, subdivision 4 was in effect when the district court entered default judgment against Brinkman and when the court of appeals reversed the district court. Indeed, the legislative history of the repeal shows that the legislature repealed the section apparently based upon an erroneous reading of the court of appeals decision.[5]

The rule of statutory interpretation concerning the repeal of a statute during the pendency of an action allows the court to apply either old law or the newly enacted law. Minn.Stat. § 645.35 (1984). This court has ruled that an action on appeal shall be regarded as a pending action: "An

---

**4.** The provision in section 257.62, subdivision 4 allowing for the admission into evidence of a party's refusal to submit to blood tests is a codification of this court's earlier holding in *Ortloff:*

> Because the answer sought by the complainant's counsel was relevant and because the rationale of [*State v.*] *Andrews* [297 Minn. 260, 212 N.W.2d 863 (1973)] does not apply, we do not believe that counsel should be faulted for asking the question initially * * *. Underlying our opinion that it is not improper for a party to elicit evidence that the other party refused to submit to blood testing is our belief that blood-test procedures provide the most reliable means for making the determination of paternity more accurate and efficient.

277 N.W.2d at 206.

**5.** In proposing the repeal of Minn.Stat. § 257.62, subd. 4 as an amendment to S.F. 901, Senator Berglin, sponsor of the amendment, stated:

> The second amendment [to repeal Minn.Stat. § 257.62, subd. 4], if I could just explain, deletes a section of the law that deals with mandatory blood tests. Two weeks ago, the court of appeals ruled that our statutes regarding mandatory blood tests do not meet the criteria of mandatory blood tests because comment is allowed by the party who has refused a blood test in the trial; and so there is—removing the language that would allow that comment be entered in trial, and, therefore, our blood test statute will meet the standard the courts have set for the mandatory feature of the blood tests.

Report of Sen. Linda Berglin on S.F. 901 to the Senate Judiciary Committee (tape of March 29, 1985). The court of appeals did not rule that the comment provision of section 257.62, subdivision 4 "did not meet the criteria of mandatory blood tests," but held, instead, that default judgment was an abuse of discretion under section 257.62, subdivision 4. In other words, the court found that default judgment was not one of "the sanctions within the jurisdiction of the court." Minn.Stat. § 257.62, subd. 4 (repealed 1985).

appeal suspends a judgment and deprives it of its finality, and that lack of finality continues until the appeal is dismissed or until the appellate court has pronounced its decision." *Holen v. Mpls.-St. Paul Metropolitan Airports Commission*, 250 Minn. 130, 136, 84 N.W.2d 282, 287 (1957). The court cannot rule on Brinkman's pending appeal under a new law since section 257.-62, subdivision 4 was simply repealed and not replaced. The repeal will have no effect on this or future parentage suits, however, since, under the law as it now exists, the *Ortloff* rule still allows a party to elicit evidence that the other party refused to submit to blood testing, and the rules of civil procedure, which govern parentage suits under Minn.Stat. § 257.65, still provide for the traditional discovery sanctions. *See* Minn.R.Civ.P. 37.02. Therefore, this decision addresses the rights of parties in a parentage suit as determined under the then existing statute and as determined under the present law.

The court of appeals overturned the district court default judgment on two grounds. First, the court ruled that the district court had abused its discretion in ordering a default judgment as a sanction for the defendant's failure to submit to court-ordered blood tests. Second, the court found reversible error in the entry of default judgment without first hearing evidence establishing the plaintiff's case when the defendant had answered the complaint. Both grounds are aspects of the same issue—the appropriateness of default judgment in a parentage suit.

Appellant Hennepin County argues that it was not an abuse of discretion for the district court to enter default judgment against a defendant in a parentage suit. It was the clear intent of the legislature, the appellant maintains, not to limit the sanctions available to the court simply to admitting the evidence of the defendant's refusal to take the blood tests. Appellant urges that default judgment is necessary if the courts are to possess an effective remedy to secure blood test results, the best evidence available to establish parentage. Appellant further argues that the subsequent repeal of section 257.62, subdivision 4 indicates that the legislature intends that the regular discovery sanctions be used, including default judgment. Appellant disputes the court of appeals' statement that proceedings to compel submission would have been the proper substitute for default judgment since contempt proceedings to compel a physical examination are apparently barred by Minn.R.Civ.P. 37.02, subd. 2(d).

Respondent Brinkman argues that the court of appeals correctly ruled that default judgment was an abuse of discretion and reversible error. He maintains that he had the due process right, as a defendant in a parentage suit, to a hearing on the merits of the case and the propriety of default before the entry of final judgment.

We first observe that, in entering default judgment, the district court employed an extreme sanction for the violation of a discovery order. This requires close examination due to the emphasis placed upon accuracy in resolving parentage suits. The United States Supreme Court has stressed the great care courts must use in determining parentage:

> The private interests implicated here are substantial. Apart from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship. This Court frequently has stressed the importance of familial bonds, whether or not legitimized by marriage, and accorded them constitutional protection. Just as the termination of such bonds demands procedural fairness, so too does their imposition. Through the judicial process, the State properly endeavors to identify the father of a child born out of wedlock and to make him responsible for the child's maintenance. Obviously, both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination.

*Little v. Streater*, 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981) (citations omitted). This court has also recognized the important interest a putative father has in the accurate determination of the claim brought against him:

> The paternity defendant, of course, has a substantial interest in the accuracy of the adjudication. He has a direct financial interest, for as an adjudicated father he will be ordered to contribute to the support of the child throughout its minority. Similarly, in light of recent case law, the adjudicated father's estate can also be burdened by the child's claims to inheritance, workers' compensation benefits, and insurance proceeds. In addition to his financial interests, the defendant, if found to be the father, is also indirectly threatened with loss of liberty, since incarceration may be imposed for criminal nonsupport under § 609.375. * * * Finally, the social stigma resulting from an adjudication of paternity cannot be ignored.

*Hepfel v. Bashaw*, 279 N.W.2d 342, 345 (Minn.1979) (citations omitted). Indeed, all parties—father, mother and child—benefit from rules requiring only the most accurate evidence in parentage suits.

In addition, the court of appeals reversed the district court based upon the trial court's failure to hear evidence supporting the plaintiff's claim before entering default judgment. Under the rules of civil procedure, there is some discretion allowed the court in determining what it will hear before entering default judgment: "If other relief than the recovery of money be demanded and the taking of an account, or the proof of any fact, be necessary to enable the court to give judgment, it *may* take or hear the same or order a reference for that purpose, and order judgment accordingly." Minn.R.Civ.P. 55.01, subd. 3 (emphasis added). The recent emphasis on the substantial interests of the parties in an accurate determination of a parentage suit, however, leads us to conclude that a hearing verifying the allegations in the complaint must be available at the request of the defendant or his counsel.

Therefore, under the present law, the trial court has two alternative sanctions when a defendant fails or refuses to take a court-ordered blood test:[6]

■ First, the trial court can issue a contempt citation to order the defendant to submit to the tests. In a great majority of cases, this would prove to be the adequate remedy and is available as an exception to the general rule against proceedings to compel physical examinations.[7]

■ Second, a trial court can, as was done in this case, enter default judgment against the defendant. While default is an extreme sanction, we affirmed its use in *Wessels v. Swanson*, 289 N.W.2d 469

---

6. The trial court could conceivably proceed to trial without the tests. This, however, is an unacceptable alternative that would throw the quality of evidence used in parentage suits back to the pre-*Hepfel* days since, as a matter of trial strategy, most defendants would simply refuse to take the test. We believe that when modern technology is available to prevent undue and unnecessary burdens on the court system, there is an inherent power in the courts to use that technology. *See Hepfel v. Bashaw*, 279 N.W.2d 342, 344–48.

7. In *State on behalf of Kremin v. Graham*, 318 N.W.2d 853, 855–56 (Minn.1982), this court ruled that mandatory blood tests are not in violation of a party's constitutional rights:

> We follow the appropriate balancing approach * * * and hold that the state's interests in compelling the removal of blood from a putative father for the purpose of determining the paternity of a child outweigh the putative father's right not to have his bodily integrity violated by such a test. The state has a substantial interest in determining the paternity of children, and there are also significant private interests involved * * *. As the court determined in *Schmerber* [*v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)], blood testing is a limited form of intrusion into one's bodily integrity or privacy. The state's compelling interests here easily outweigh the comparatively limited interest of the party in preserving his bodily integrity from such an intrusion. In many cases blood testing is the only reliable way of determining paternity.

Proceedings to compel blood tests in paternity suits are an exception to the general rule and we hold that such proceedings may be ordered.

(Minn.1979), where the defendant had not appeared either by answer or otherwise.[8] We agree with the court of appeals that paternity proceedings are so important to all parties concerned, however, that default should not be entered, upon objection, merely on the allegations and verifications contained in the complaint. It should be entered only after the allegations have been verified in open court under oath before a trial judge. That does not mean that a trial court, when confronted with a defendant who refuses to take a blood test and otherwise defaults, must grant that defendant a trial and a chance to confront witnesses; but it should, upon request of the defendant, require the mother of the child to be placed on the stand in open court and be required to testify under oath to verify the allegations of the complaint. This is similar to the oral procedure followed in divorce actions prior to the passage of the no-fault act. In those cases, if a defendant was in default, the plaintiff was still required to come into court and testify under oath, verifying the allegations in the complaint.

█ Although the above-outlined procedure shall be followed hereafter, we do not deem it necessary to remand the present case to the district court since we deem the defendant clearly to have waived his rights to such a procedure. In this case, defendant was the one who initially requested the tests and failed twice to appear at scheduled appointments. It was he who requested that a Hennepin County public defender be appointed for him and that Hennepin County agree to pay for the blood tests. His counselor was present on June 8, 1984, when the motion for default judgment was heard. He and his counselor were present on July 5, 1984, the date set for a child support hearing. At that time, defendant agreed once again to take a blood test and then failed for a third time to appear. At neither the June 8 nor July 5 hearing does the record indicate that defendant requested the court to conduct any sort of evidentiary hearing to verify the allegations in the petition. Thus, he has waived the right to the above-outlined procedure and is deemed to have admitted the allegations of the complaint by waiving any objections thereto. Under *Wessels,* however, we will allow the judgment to be vacated if, within 90 days of this opinion, defendant submits blood test results disproving his paternity. Such evidence would furnish a reason for justifying release from the operation of the default judgment under Minn.R.Civ.P. 60.-02(6).

Thus, while we rule that a trial court must, upon request, conduct a hearing verifying the allegations of a paternity complaint, we reverse the court of appeals' remand of the case and reinstate the default judgment unless the defendant presents to the trial court blood test evidence disproving his paternity within 90 days following the release of this opinion.

**8.** In *Wessels,* this court upheld a default judgment against a defendant who had failed to file an answer, to appear at trial, and to act with due diligence after receiving notice of entry of judgment. Citing the financial and personal interests of the father, this court concluded that "[s]uch consequences require that an adjudication of paternity be based on the most reliable kind of evidence available." 289 N.W.2d at 470. The court, however, allowed the default judgment to stand, but further ruled that the judgment would be vacated if the defendant presented blood test evidence disproving paternity within 90 days. Such highly reliable evidence would, the court ruled, furnish a reason for justifying relief from operation of the judgment under Minn.R.Civ.P. 60.02(6). *Wessels* establishes that this court will, with caution, allow default judgments in parentage suits. This caution is even greater when the default judgment is entered as a sanction for violation of a discovery order.