**In the Matter of the WELFARE OF J.W. and A.W.**

Nos. C8–85–119, C9–85–131.

Supreme Court of Minnesota.

Aug. 8, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Minn., Thomas L. Johnson, Ann Stiehm Ahlstrom, Minneapolis, Minn., for Hennepin County.

Thomas H. Shiah, Minneapolis, Minn., for Winston.

William R. Kennedy, David Duffy, Hennepin County Public Defender, Minneapolis, Minn., for Sherry.

Rand L. Decker, Minneapolis, Minn., for guardian ad litem.

WAHL, Justice.

Hennepin County filed a dependency and neglect petition concerning J.W. and A.W. in district court. The district court held a trial and granted the petition, awarding legal custody to the county. Respondent parents appealed to the court of appeals, who reversed the district court order. The county sought further review. We reverse the decision of the court of appeals and reinstate the order of the district court.

On March 15, 1984, respondents brought their 2–year–old nephew, H.L., who was staying in their home, to the Minneapolis Children's Medical Center in critical condition. The child had received an injury to his abdomen and was in cardiopulmonary arrest. The respondents maintained that they were taking care of H.L. during the day when he suddenly became ill. The Hennepin County Bureau of Social Services petitioned the district court on March 20, 1984 for an order declaring the respondents' own children, J.W., then 2–½ years, and A.W., then 1–½ years, dependent and neglected children under Minn.Stat. § 260.-015, subds. 6(d) and 10(b) (1984) and transferring custody of the children to the coun-

ty under Minn.Stat. § 260.191, subd. 1(b)(2) (1984). In addition, the county asked the court to order the immediate temporary custody of the children pursuant to Minn. Stat. § 260.135, subd. 5 (1984). Finding probable cause to believe a protection matter existed, the district court ordered the children to be placed in the temporary custody of the county pending determination of dependency and neglect. H.L. died on March 23, 1984 and the medical examiner subsequently ruled his death a homicide. No criminal prosecution has yet been initiated, but the case is considered under active investigation.

. Upon petition of the county, the district court ordered the respondents to submit to depositions. At the July 25, 1984 depositions, both respondents immediately invoked their Fifth Amendment right against self-incrimination. The county then proceeded to question respondents regarding prior marital violence, intentional injury to H.L., and the cover-up of H.L.'s injury. In response to all questions, the respondents refused to answer on Fifth Amendment grounds.

On September 14, 1984, upon petition of the county, the district court issued an order deeming the matters for which the respondents had invoked the Fifth Amendment to be established for purposes of the petition and barring them from opposing those matters at the dependency and neglect trial. The court based its order on Minn.R.P.Juv.Ct. 57.10, subd. 4(a), (b).

Counsel for respondents objected to the July 31 order at trial. The district court, however, refused to allow respondents to introduce evidence or cross-examine witnesses concerning the matters deemed admitted and allowed counsel for respondents to make an offer of proof only at closing argument. The county called three witnesses. The doctor who examined H.L. on March 15 testified that the child had received an adult-inflicted blow to his abdomen 6–8 hours before being taken to the medical center. The medical examiner testified that the cause of death was homicide. The social worker present at an interview

with respondents after they brought H.L. to the hospital testified that the father admitted he was alone with the children on March 15, 1984 when he noticed that H.L. suddenly started "breathing funny," and that he then brought the child to the medical center. The mother told the social worker and a police investigator that she had been at school during the day and, when she returned, saw that H.L. was ill, but noticed no bruises. The court also received into evidence an earlier affidavit and petition for protection filed by the mother alleging three prior instances of spousal abuse. Throughout the trial, the trial court limited counsel for the respondents to foundational objections and did not permit him to introduce evidence to rebut the county's case or to conduct cross-examination. Respondents made no offers of proof at closing arguments, but moved to have the petition dismissed.

The district court denied the motion for dismissal, ruled J.W. and A.W. to be dependent and neglected children under section 260.015, subdivisions 6(d) and 10(b) and awarded legal custody of the children to the county, placing them in foster care pending further order. The court based its ruling on the parents' history of violence, the unexplained homicide of H.L. for which one or both of the respondents was deemed responsible, and their cover-up of the circumstances surrounding H.L.'s injury. Based on these findings, the court concluded that respondents demonstrated a lack of ability to care for their own children, that J.W. and A.W. were, therefore, dependent and neglected, and ordered the children kept in foster care. The county was to prepare a case plan addressing all parenting issues raised, and the court continued the matter for a future dispositional hearing. Subsequently, the district court ordered that no case plan be adopted until resolution of the present appeal. The record indicates that there has been no disposition hearing. Respondents appealed separately to the court of appeals, where the appeals were consolidated.

The court of appeals reversed the district court and remanded the case for a new trial. *In the Matter of the Welfare of J.W. and A.W.*, 374 N.W.2d 307 (Minn.Ct.App. 1985). The court of appeals found that, while the district court could deem admitted the answers to the deposition questions to which respondents invoked the Fifth Amendment, it was a denial of due process for the district court to bar the respondents from offering evidence or from cross-examining witnesses. To bar respondents from offering evidence or from cross-examining witnesses, in the court's opinion, created too great a risk of erroneous deprivation of the respondents' parental rights and required them to sacrifice due process in order to invoke the Fifth Amendment. The county, joined by the guardian ad litem, petitioned this court for further review, which was granted.[1]

The issues raised on appeal are:

I. Whether the court of appeals correctly found that the district court's imposition of discovery sanctions violated due process; and

II. Whether the evidence was sufficient to support the district court findings of dependency and neglect.

## I.

The county and the guardian ad litem maintain that the district court sanctions for violation of its discovery order did not violate the respondents' due process rights because adverse inferences may be drawn in court actions when parties invoke their Fifth Amendment rights. They urge that parental due process rights do not override the public's interest in protecting dependent and neglected children and, therefore, prohibiting cross-examination and presentation of evidence in this case was constitutional. Further, appellants reason that any offer of proof or cross-examination concerning the matters deemed admitted would have been irrelevant.

Respondents assert that the district court sanctions coerced them into choosing

1. We commend the excellent representation af-

forded all parties by their respective counsel.

one constitutional right over another or, in other words, penalized them for invoking the Fifth Amendment. They argue that their interest in the care, custody and companionship of their children outweighs the state's interest in providing sanctions for the violation of discovery orders. Respondents further maintain that it is in the state's interest, as well as the parents', to allow the respondents a full opportunity to be heard in order to reduce the risk of error. The mother separately argues that the sanction prohibited her from presenting evidence on her own behalf that would distinguish her actions from those of her husband.

■ The district court based its sanctions for violation of its discovery order on Minn.R.P.Juv.Ct. 57.10, subd. 4, which provides in part:

If a participant fails to obey an order to provide or permit discovery, including an order under these rules, the court in which the action is pending may make such orders in regard to the failure as are just, including the following:

(a) an order that the matters regarding which the order was made, or any other designated facts, shall be taken to be established for purposes of the proceeding, in accordance with the claim of the participant who obtained the order, or

(b) an order refusing to allow the disobedient participant to support or oppose designated claims, or prohibiting the disobedient participant from introducing designated matters in evidence, * * *.

*Id.*

These sanctions are normally allowed under the rules. In this case, however, they come into conflict with the right of parties in a dependency and neglect proceeding to present evidence and cross-examine witnesses when determining the central issues of dependency and neglect. Minn.R.P. Juv.Ct. 59.03, subd. 2, provides:

(A) *Trial Rights.* The counsel for the persons with the right to participate and

the county attorney shall have the right to:

 (i) present evidence, and

 (ii) present witnesses, and

 (iii) cross-examine witnesses, and

 (iv) present arguments in support of or against the allegations of the petition.

*Id.* These rights are part of the general guarantees of due process. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Under due process analysis, the extent to which a party is given a full evidentiary hearing requires a balancing of the governmental interest, the private interests, and the risk that the present procedures will lead to erroneous decisions. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976).

The overriding issue in this case is not simply whether the respondents' parental rights to the care, custody and companionship of their children outweigh the state's interest in providing sanctions for the violation of discovery orders, but whether respondents' parental rights outweigh the rights of their children to safety and protection. The purpose of the juvenile protection law is to protect "the spiritual, emotional, mental, and physical welfare of the child." Minn.Stat. § 260.011, subd. 2 (1984 and Supp.1985). In seeking to enforce discovery orders issued in a juvenile protection proceeding, the state acts for the affected child. The fact that the due process issues raised in this case implicate parental rights does not lessen the child's interests. Nor should focus on the state as an agent of the child's interests obscure our recognition that it is always the best interests of the child that must be balanced against parental rights in determining what is fundamentally fair in a juvenile protection proceeding. Not only has the legislature made clear, by significant 1978 statutory amendments, that it intended to balance the interests of both parents and child in determinations to continue or to terminate the parent-child relationship, this court has long recognized the "best interest of the

child" doctrine in cases determining the circumstances in which children are required to live. *In Re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn. filed July 11, 1986).[2]

No one disputes that respondents had the right to invoke the privilege against self-incrimination and to refuse to answer deposition questions that they apparently feared would implicate them in a possible homicide prosecution. *See Parker v. Hennepin County District Court, Fourth Judicial District*, 285 N.W.2d 81, 82–83 (Minn.1979) (privilege against self-incrimination may be invoked in civil proceeding). The question is whether the sanctions imposed by the trial court under Minn.R.P.Juv.Ct. 57.10, subd. 4(a), (b) unconstitutionally burdened the respondents' exercise of those rights.

We rejected in *Parker* a due process challenge to a court order deeming certain facts admitted as against defendants sued in a civil action for conversion of funds. The defendants had refused to answer requests for admission, invoking the Fifth Amendment, because they feared a possible prosecution for criminal tax fraud. In holding the discovery sanction constitutional as applied in that case, we held the privilege against self-incrimination must, in a civil suit, be balanced against the policy supporting discovery rules and the public interest in preventing an unfair advantage to one party. *Id.* at 83. In cases involving children, the interests of those children in safety and protection must also be balanced. Family members are frequently the best, if not the only, source of information regarding the abuse of children when such abuse occurs within the family setting. In a case where a parent or caretaker has exclusive or near-exclusive knowledge of the facts vital to establishing whether a young child is in need of protection, a dif-

ferent balance of interests than that reached by the court of appeals is mandated.

We recently decided that in a paternity proceeding, default judgment could be entered solely on the basis of a verified complaint against an alleged father who refused to submit to blood testing that would provide the most reliable evidence of paternity or nonpaternity. *County of Hennepin v. Brinkman*, 378 N.W.2d 790 (Minn. 1985). The alleged father claimed that entry of a default judgment of paternity violated due process. Our decision in *Brinkman* represents our conclusion that the child's interests in having parentage established prevailed over the father's right to a hearing on the merits where it was the father who had deprived the factfinder of the most accurate evidence available in a paternity proceeding.

■ *Brinkman* is not unlike the case today in its subject matter. The creation of familial ties is a parental interest comparable in weight and importance to the termination of these ties. It is clear after *Brinkman* that even where there is a risk of an erroneous decision involving a significant parental interest, due process will not always prohibit a summary proceeding where the party claiming the due process deprivation is responsible for the limited information available to the factfinder. In the case before us today, as in *Brinkman*, the interests of the children involved are significant. The safety and well-being of J.W. and A.W. are at issue here, perhaps even their lives. Given our case law and the weight properly to be given the interests of the parties, including the children, the discovery sanction of deeming matters admitted did not violate respondent's constitutional right to due process. The re-

---

2. This court has constantly used "the best interests of the child" as a factor in making determinations that affect juveniles. *See e.g. Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985) (custody determination); *In Re Welfare of P.J.K.*, 369 N.W.2d 286 (Minn.1985) (termination of parental rights under Minn.Stat. § 260.221(b)(7)); *Grein v. Grein*, 364 N.W.2d 383 (Minn.1985) (modification of custody); *Rutten v. Rutten*, 347

N.W.2d 47 (Minn.1984) (visitation rights); *Auge v. Auge*, 334 N.W.2d 393 (Minn.1983) (removing child from state); *In Re Welfare of K.T.*, 327 N.W.2d 13 (Minn.1982) (voluntary termination of parental rights); *State ex. rel. Kremin v. Graham*, 318 N.W.2d 853 (Minn.1982) (ability to force paternity blood tests); *Application of Saxton*, 309 N.W.2d 298 (Minn.1981) (petition for change of surname).

spondents do not challenge the holding of the court of appeals to this effect.

 The sanction of denying respondents the opportunity to offer independent evidence on the issues deemed admitted or to cross-examine the expert witnesses called by the state on these matters was not an abuse of discretion requiring reversal. Once a matter is deemed admitted, it is established for purposes of the proceeding.[3] Any effort to submit adverse evidence on the matter or to attempt to contradict an admitted fact would be irrelevant because the issue is no longer is dispute. Because we have concluded that the sanction that deems the matter admitted is constitutionally valid, it follows that the district court may limit further evidence and cross-examination concerning established facts. While the truth-finding function of the court and the interests of the parents would have been served by permitting the respondents to cross-examine witnesses and to present evidence, we hold the district court's holding to the contrary was not an abuse of discretion requiring reversal.

## II.

 We consider now the sufficiency of the evidence to support the district court's findings of dependency and neglect. Such findings must be supported by clear and convincing evidence. Minn.R.Juv.P. 59.05; *See also In Re Rosenbloom,* 266 N.W.2d 888 (Minn.1978) (termination of parental rights must be supported by clear and convincing evidence). The state did not rely on the admissions alone for proof that J.W. and A.W. are, as the district court found, dependent children within the meaning of Minn.Stat. § 260.015, subd. 6(d) (1984) because they are without proper parental care due to the emotional and mental disability and state of immaturity of their parents, and that they are neglected chil-

dren within the meaning of Minn.Stat. § 260.015, subd. 10(b) (1984) because they are without proper parental care due to the faults and habits of their parents. The state also presented, through the testimony of a physician who examined and treated H.L., a social worker who was present at respondents' interview with a police officer, and the Hennepin County Medical Examiner, substantial evidence that respondents were responsible for the death by beating of a young child in their care and for covering up the cause of that death. There was other evidence as well that violence is part of respondents' family history. We hold the district court's findings that because of the unexplained homicide, the family violence, and the youth and vulnerability of respondents' own children, J.W. and A.W. are dependent and neglected children are not clearly erroneous and are supported by clear and convincing evidence.[4]

The decision of the court of appeals is reversed; the order of the Hennepin County District Court is reinstated.

YETKA, J., dissents.

YETKA, Justice (dissenting).

The United States Supreme Court has stated:

> The Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to "the companionship, care, custody, and management of his or her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection." * * * A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one.

*Lassiter v. Department of Social Services,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68

---

**3.** An adverse inference in a civil case cannot have any effect or be revealed in possible future criminal proceedings. *Parker,* 285 N.W.2d at 83.

**4.** A number of other jurisdictions have determined that dependency and neglect findings may be based on the parents' treatment of other children. *See e.g. In Re Minor,* 377 Mass. 876, 389 N.E.2d 68 (Mass.1979); *In Re T.Y.K.,* 183 Mont. 91, 598 P.2d 593 (1979).

L.Ed.2d 640 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1971)). We have held that parents should not be deprived of the custody and companionship of their children "except for grave and weighty reasons." *McDonald v. Copperud*, 295 Minn. 440, 444, 206 N.W.2d 551, 553 (1973); *see also County of Hennepin v. Brinkman*, 378 N.W.2d 790, 793 (1985). ("This Court frequently has stressed the importance of familial bonds, whether or not legitimized by marriage, and accorded them constitutional protection." Quoting *Little v. Streater*, 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981).) Furthermore, the facts deemed admitted by the district court constituted almost the whole of the evidence on which the court based its conclusions. Without the opportunity to present evidence or cross-examine witnesses, the risk of an erroneous decision was great. The state's interest in enforcing discovery orders cannot outweigh the important private interest of the respondents in the custody of their children and an accurate determination of a dependency and neglect hearing.

Respondents also had a Fifth Amendment right to remain silent in response to the questions put to them in the court-ordered depositions. It is clearly established that parties in civil proceedings may invoke the Fifth Amendment in order to protect themselves from possible criminal prosecution. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Minn. State Bar Ass'n v. Divorce Assistance Ass'n*, 311 Minn. 276, 248 N.W.2d 733 (1976). This court has also ruled, however, that, in civil proceedings, "a court order which deems admitted allegations in a request for admission does not violate the Fifth Amendment rights of the party upon whom the request was served, nor Article I, Section 7 of the Minnesota Constitution." *Parker v. Hennepin County District Court*, 285 N.W.2d 81, 82 (Minn.1979), *fol-lowing Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).[1] We warned, however, that "[i]nvocation of the Fifth Amendment by a civil defendant, * * * requires a * * * subtle response, because of the involuntary nature of a defendant's participation in a lawsuit, and the appearance of compulsion." 285 N.W.2d at 83. Adverse inferences against civil defendants who invoke the Fifth Amendment will be permitted only when "[s]uch sanctions do not punish a defendant for his assertion of the privilege, but for his failure to answer as he typically would have under normal circumstances." *Id.* The United States Supreme Court stated: "[O]ur cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1976). *See also Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). This rule is based on the broader principle that a person cannot be forced to forfeit one constitutional right in order to exercise another. *Cunningham*, 431 U.S. at 807–08, 97 S.Ct. at 2136–37; *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968). In *Parker*, the defendant was found not to be penalized for invoking the Fifth Amendment but, instead, was prevented from gaining an unfair advantage over the plaintiff. *Parker*, 285 N.W.2d at 83. In *Baxter*, the Supreme Court allowed an inference to be drawn from the defendant's silence since the issue was only one of a number of factors that the trier of fact considered and was given no more probative value than the case warranted. Neither *Parker* nor *Baxter* concerned parents' right to a fair and accurate hearing before their parental rights were substantially affected. Neither case involved an order pro-

**1.** *Parker* concerned an employer's conversion suit against an employee who refused to answer a request for admissions on Fifth Amendment grounds, fearing possible criminal tax fraud charges. *Baxter* concerned the due process rights of a prisoner in a disciplinary proceeding in which inferences were allowed to be drawn from the prisoner's silence.

hibiting the production of evidence or cross-examination of witnesses.

The respondents asserted their Fifth Amendment right in the face of a possible homicide prosecution. As required by due process and clearly established by the rules of procedure for juvenile court, they had the right to present evidence and cross-examine witnesses. They were forced to forfeit their due process rights in order to invoke the Fifth Amendment. The error is augmented by the fact that the mother hoped to differentiate her involvement in H.L.'s death from that of the father. I would find that, under the circumstances of this case, such a sanction constitutes a penalty for invoking the Fifth Amendment since the facts deemed admitted determined the central issues of the trial and resulted in the removal of the respondents' children. Furthermore, as the court of appeals found, barring respondents from presenting evidence or cross-examining witnesses even more obviously penalized the respondents for exercising their rights. Since the district court based its rulings largely on the facts deemed admitted and which respondents were prohibited from opposing, the error committed was not harmless error.

There are several further points to emphasize concerning the particular circumstances of this case. First, the rules of procedure for juvenile court explicitly provide for the right of cross-examination and the right to present evidence. Second, once the issues in the present case were deemed admitted, there was no real purpose to having the dependency and neglect hearing, for the main issues were settled by the sanction. Third, it came out at oral argument that there was some conflict which should have been explored at cross-examination concerning when the blow was inflicted on H.L. Finally, the questions asked at the deposition were similar to those that a grand jury would ask and, therefore, would clearly further the state's criminal investigation.