**In the Matter of the WELFARE OF J.K.M.**

**No. CO–86–531.**

Court of Appeals of Minnesota.

Dec. 9, 1986.

Review Denied Feb. 13, 1987.

Review Granted Jan. 16, 1987.

---

## OPINION

NIERENGARTEN, Judge.

The trial court found J.K.M. to be a neglected child. Motion for a new trial was denied and J.K.M.'s parents appeal. We affirm.

## FACTS

J.K.M. was born in November, 1983. On January 30, 1985, J.K.M.'s father brought him to the Park Medical Center where an x-ray showed a fractured skull. J.K.M. was taken to a hospital for further treatment. The father thought J.K.M.'s injury may have happened at the day care provider's home. An attending physician opined the injury was the result of a blow to the head but he could not determine what caused the blow. After reviewing J.K.M.'s medical record, this physician became concerned about J.K.M.'s safety and the injury was reported to Child Protection Services.

The medical records were admitted into evidence against the parents' strenuous objections. These records, as admitted, included the following information:

1. On January 30, 1985, at the age of fourteen months, J.K.M. was diagnosed as having a skull fracture with no explanation as to the cause of the injury. A bone scan done the following day showed no other demonstrable fractures. It did show some new bone growth along the right tibia which could be the result of trauma.

2. On December 22, 1984, at the age of thirteen months J.K.M. was seen at Park Medical Clinic for a shoulder and/or arm injury. The x-ray report showed no fracture. The treating doctor put a sling on and the records make reference to an orthopedic consult but no other records concerning this injury were introduced.

3. On July 19, 1984, at the age of eight months, J.K.M. was treated for a second degree burn on his arm which was approximately 2x4 inches. The area was treated with Silvadene. The record indicated the injury was caused by a curling iron but gives no further explanation.

---

Deborah K. Ellis, Thomason, Hawkins & Ellis, Ltd., St. Paul, for appellants-parents.

Nancy W. McLean, Asst. Hennepin Co. Atty., Minneapolis, for respondent.

Nancy Zalusky Berg, Minneapolis, for guardian ad litem.

Heard, considered and decided by NIERENGARTEN, P.J., and WOZNIAK and SEDGWICK, JJ.

**16**

The rest of the admitted medical records show routine care prior to the head injury and care for minor cuts and bruises following the head injury.

While J.K.M. was still in the hospital, the parents were interviewed by the police. The father was unable to offer any explanation for J.K.M.'s injuries. He denied causing J.K.M.'s injury but later said it was possible and probable that he had. When confronted with his statement, he attempted to qualify the remark by stating that from his perspective as a scientist, anything was possible. The father also expressed concern about how criminal charges would affect his business.

J.K.M. was released from the hospital to the custody of friends of the family. These friends testified that the parents were caring and that J.K.M. had an excellent relationship with his parents. After a hearing J.K.M. was returned to the care of his parents, with supervision by a social worker and guardian ad litem. He has remained with his parents since that time.

A consultant for the Child Protection Services reviewed J.K.M.'s medical records and his opinion was that J.K.M. might be at risk for future harm. The social worker assigned to monitor J.K.M.'s case following the preliminary hearing visited the home regularly and did not find any dangerous or hazardous conditions. The guardian ad litem testified that J.K.M. had a good relationship with both parents and did not testify about any unsafe or hazardous condition in the home.

Testimony from neighbors, relatives, and friends described the home as safe, the parents as concerned, safety-conscious and perhaps even over-protective. A psychiatrist examined appellants and J.K.M. and found no indication or likelihood of abusive or violent behavior by the parents toward their child. A family counselor who met with the family twelve to eighteen times also felt that the parents had normal parenting skills and had not and would not harm their child. J.K.M.'s primary physician was unavailable at trial because she was hospitalized. Her affidavit was admitted and she stated that she was aware of J.K.M.'s injuries and did not believe that he was a "neglected" child or that any further supervision by Hennepin County would be beneficial to the parents or J.K.M.

The trial court found J.K.M. to be a neglected child under Minn.Stat. § 260.015, subd. 10(e) and ordered disposition which included reporting requirements for the parents regarding address changes, travel and injuries. The social worker and guardian ad litem may visit twice a month. The parents are required to participate in the SCAN (Suspected Child Abuse and Neglect) Program, which includes periodic medical exam of the child, psychological testing and evaluation for all family members and recommended treatment. The parents must participate in any recommended treatment plan until participation is no longer recommended by SCAN.

**ISSUE**

Did the trial court err in finding that respondent met the burden of proving by clear and convincing evidence that J.K.M. is a neglected child?

**DISCUSSION**

A child is neglected if his or her "occupation, behavior, condition, environment or association are such as to be injurious or dangerous to himself or others; * * *." Minn.Stat. § 260.015, subd. 10(e) (1984). Parents are presumed fit to care for their children and allegations of dependency and neglect must be proved by clear and convincing evidence. *In re Welfare of R.A. and J.A.*, 375 N.W.2d 578, 580 (Minn.Ct. App.1985); Minn.R.P.Juv.Ct. 59.05. The standard of appellate review is whether the trial court's findings are "supported by substantial evidence and are not clearly erroneous." *In re Welfare of J.M.S.*, 268 N.W.2d 424, 428 (Minn.1978).

Based on medical records, the trial court found that J.K.M. had sustained several serious injuries while in the presence of either or both parents. In addition, there was advanced no credible explanation

regarding the cause of these injuries. The court concluded there was a serious risk of future injury to J.K.M. There is substantial evidence in support of this finding.

■ Appellants took issue with the trial court's finding that the injuries were caused while J.K.M. was in the care of his parents arguing that without knowing where or how the injury occurred it is equally possible that it occurred in the babysitter's home. At trial appellants did not make any argument that the injury occurred when J.K.M. was at the sitter. They indicated that they were quite pleased with her care of J.K.M. This, coupled with the father's statement that it was possible and even probable that he was responsible for J.K.M.'s injuries, would support the trial court's finding of neglect.

In making a finding of neglect the welfare of the child involved is the critical factor in the final determination. *In re Welfare of J.W. and A.W.*, 391 N.W.2d 791, (Minn.1986). The record shows that in a period of six months J.K.M. suffered three injuries which required medical attention. The head injury undeniably was very serious. There was no satisfactory explanation offered for either the head injury or the injury to the shoulder in December. Because of this, we can not say that the trial court's findings were clearly erroneous.

### DECISION

The trial court's finding of neglect is affirmed.

Affirmed.